Filed: June 24, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-1673
(CA-95-1273-R)

Gloria W. Dowe,

Plaintiff - Appellant,

versus

Total Action Against Poverty in Roanoke Valley,

Defendant - Appellee.

O R D E R

The court amends its opinion filed June 3, 1998, as follows:

On page 4, first paragraph, line 3 -- the word "met" is corrected to read "meet."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GLORIA W. DOWE,
Plaintiff-Appellant,

v.

No. 97-1673

TOTAL ACTION AGAINST POVERTY IN
ROANOKE VALLEY,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-95-1273-R)

Argued: May 8, 1998

Decided: June 3, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and
TRAXLER, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Luttig and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Helen Jean Spence, BELLER & SPENCE, P.C., Chris-
tiansburg, Virginia, for Appellant. Jonathan Martin Rogers, JONA-
THAN ROGERS, P.C., Roanoke, Virginia, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Gloria W. Dowe appeals the district court's grant of summary judgment to her former employer on her claims of employment discrimination under 42 U.S.C.A. §§ 1981 (West 1994), 1983 (West Supp. 1998), & 2000e et seq. (Title VII) (West Supp. 1998). Dowe argues that summary judgment was inappropriate because she established a prima facie case of retaliation under Title VII, and demonstrated sufficient state involvement to invoke § 1983. We disagree. A plaintiff cannot establish a prima facie case of retaliation when, as here, the relevant decisionmaker was unaware that the plaintiff had engaged in a protected activity. Similarly, a plaintiff cannot invoke § 1983 simply because a private actor is regulated and funded by the State. Accordingly, we affirm the judgment of the district court.

I.

In 1965, Dowe, who is black, was hired by Total Action Against Poverty (TAP) to work in its Head Start Program in Roanoke Valley, Virginia. In 1986, Dowe became the Social Services Coordinator at Head Start. Five years later, the position of Social Services Coordinator was divided into two positions: Parent Involvement Coordinator and Social Services Coordinator. Dowe was given her choice of positions and selected Parent Involvement Coordinator.

Shortly thereafter, Dowe decided that she disliked her new position. As a result, Dowe asked the Director of the Head Start program, Cleo Sims, if she could be the Social Services Coordinator. When Sims, who is black, selected Annette Lewis, who is also black, for the position of Social Services Coordinator, Dowe filed a Complaint with the EEOC charging that her request to be named Social Services Coordinator was denied on account of her race.[1]

_____

[1] Dowe also claimed that she was denied annual leave because she was black. In dismissing this claim, the EEOC noted that Dowe had actually conceded that "she did not have all her work completed" when she requested leave. This concession, the EEOC concluded, provided TAP with a legitimate, nondiscriminatory reason for denying Dowe annual leave.

2

Before TAP became aware of Dowe's complaint with the EEOC, Dowe had been reprimanded for work-related deficiencies. In particular, Sims reprimanded Dowe for ignoring four requests to prepare a work plan (the Plan) and for poor record keeping. After TAP became aware of Dowe's complaint with the EEOC, numerous other failures in her job performance were noted. Specifically, Sims reprimanded Dowe for maintaining a poor filing system, failing to keep commitments to several clients, and for "calling in sick" to avoid specific work assignments.

Because of Dowe's failure to complete the Plan, Sims drafted one for her. On June 1, 1992, Sims and Dowe met to discuss the proposed Plan. Dowe disagreed with one of the Plan's objectives, however, and refused to sign it. Dowe was informed that if she did not sign the Plan by June 8, 1992, she would be placed on probation. Despite the threat, Dowe continued her refusal to sign the Plan. On June 16, 1992, Dowe was placed on probation.

On August 21, 1992, Dowe's charge of race discrimination was dismissed by the EEOC. The EEOC found no violations of any statute and concluded that Dowe was not a victim of discrimination. On appeal, Dowe concedes that her initial charge of race discrimination was without merit.

In late 1992, Dowe's probation ended, and she became a Family Service Specialist. Within several months, Dowe was reprimanded by Lewis, her new supervisor. In particular, Dowe was reprimanded for not completing child abuse training, failing to collect the appropriate parent surveys, and attending Parent Policy Council meetings without permission. The following month, Dowe was reprimanded by Lewis for disrupting a Parent Policy Committee meeting. Dowe responded to the reprimand by informing Lewis that she would continue to attend Parent Policy Committee meetings despite being directed not to do so. Despite Dowe's insubordination, no action was taken against her at this time.

In December of 1994, Dowe was placed under the supervision of Katie Weddington. Although Dowe's caseload was reduced, Dowe's job performance, including her record keeping, did not improve. As a result of these deficiencies, Dowe was placed on probation for a

3

second time. Under the terms of her probation, Dowe was given specific dates upon which to complete her projects and paperwork. On April 13, 1995, after Dowe failed to meet these deadlines, Weddington fired Dowe.

Dowe filed suit in the United States District Court for the Western District of Virginia alleging employment discrimination under 42 U.S.C.A. §§ 1981, 1983, and 2000e et seq. In particular, Dowe contends that she was terminated by TAP in retaliation for having filed a charge of race discrimination with the EEOC. Following discovery, TAP moved for summary judgment. After briefing and oral argument, the district court granted TAP's motion. In ruling on her Title VII claim, the district court found that Dowe failed to meet "her burden of establishing the required causal connection between the protected activity and the adverse action." (J.A. at 201.) With respect to her § 1981 claim, the district court found that she failed to establish that her "termination was racially motivated." (J.A. at 202.) Finally, the district court found that Dowe had "not demonstrated sufficient state involvement to invoke section 1983." (J.A. at 203.) This appeal followed.

II.

On appeal, Dowe contends that she (1) established a prima facie case of retaliation under Title VII and (2) demonstrated sufficient state involvement to invoke § 1983.[2] As a result, she argues that the district court erred in granting summary judgment to TAP. We review de novo the district court's decision to grant TAP summary judgment. See Halperin v. Abacus Tech. Corp., 128 F.2d 191, 196 (4th Cir. 1997). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in her favor. See

_____

[2] On appeal, Dowe does not challenge the district court's finding that she failed to establish a claim under § 1981.

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). With these principles in mind, we address Dowe's arguments in turn.

A.

To prevail on her retaliation claim, Dowe must satisfy the three-step proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, Dowe must establish, by a preponderance of the evidence, a prima facie case of retaliation. Once established, the burden shifts to TAP to rebut the presumption of retaliation by articulating non-retaliatory reasons for its actions. Cf. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If TAP meets its burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case," id. at 255 n.10, and Dowe bears the ultimate burden of proving that she has been the victim of retaliation, see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-11 (1993).

On appeal, Dowe first contends that she established a prima facie case of retaliation under Title VII. To establish a prima facie case of retaliation under Title VII, a plaintiff is required to prove (1) that she engaged in a protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal connection between the first two elements. See Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir.), cert. denied, 117 S. Ct. 70 (1996). It is undisputed that Dowe engaged in protected activity when she filed her discrimination charge with the EEOC. See, e.g., Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (filing a complaint with the EEOC is a protected activity). It is also undisputed that an adverse employment action was taken against Dowe. See, e.g., Hartsell v. Duplex Products, Inc., 123 F.3d 766, 775 (4th Cir. 1997) (recognizing that discharge is an adverse employment action). To survive summary judgment, therefore, Dowe must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action. See Anderson, 477 U.S. at 248 (holding that summary judgment is appropriate "if the evidence is such that a reasonable jury could [not] return a verdict for the non-moving party"); see also Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985) (noting that "the nonmoving party must produce `specific facts showing that there is a genuine issue for trial,'

5

rather than resting upon the bald assertions of his pleadings" (quoting Fed. R. Civ. P. 56(e))); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that there is an affirmative duty for "the trial judge to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)).

To satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case. See, e.g., Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267 (5th Cir. 1994) (dismissing claim because no evidence that relevant decisionmaker knew that plaintiff had complained of discrimination); Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988) (dismissing claim because relevant decisionmaker was unaware that plaintiff had filed a complaint with the EEOC); Talley v. United States Postal Serv., 720 F.2d 505, 508 (8th Cir. 1983) (dismissing claim because no evidence that supervisor who made adverse personnel decision was aware that plaintiff had engaged in a protected activity). Here, it is undisputed that Weddington -- the relevant decisionmaker -- was unaware that Dowe had ever filed a complaint with the EEOC. As a consequence, Dowe cannot establish the necessary causal connection between her filing a complaint with the EEOC and her termination. It necessarily follows, therefore, that Dowe cannot establish a prima facie case of retaliation.

In addition, we note that over three years lapsed between the protected activity and the adverse employment action. This Court has held that evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to "satisf[y] the less onerous burden of making a prima facie case of causa[tion]" Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). We believe the opposite to be equally true. A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection exists between the two. See Burris v. United Tel. Co., 683 F.2d 339, 343 (10th Cir. 1982)

6

(holding that three years between the protected activity and the adverse employment action was too long to establish the third element); Clark v. Chrysler Corp., 673 F.2d 921, 930 (7th Cir. 1982) (holding that two-year time lapse negated any inference of causal connection). Indeed, were this not the case, an employee could guarantee his job security simply by filing a frivolous complaint with the EEOC on his first day of work. Title VII was not enacted to guarantee tenure in the workplace.

In sum, we conclude that Dowe has failed to forecast evidence sufficient to establish that a causal connection exists between the protected activity and the adverse employment action. **3** As a result, Dowe cannot establish a prima facie case of retaliation under Title VII. Accordingly, the district court did not err in granting TAP's motion for summary judgment. See Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").**4**

B.

We now consider whether the actions of TAP give rise to liability under § 1983. To prevail on her § 1983 claim, Dowe must establish:

_____

**3** We also note that it is undisputed that Dowe was reprimanded by her then supervisor on several occasions prior to filing her complaint with the EEOC. This fact also undermines Dowe's contention that she was terminated because she participated in a protected activity.

**4** Even assuming that Dowe forecasted evidence sufficient to establish a causal connection between the protected activity and the adverse action -- therefore establishing a prima facie case of retaliation -- TAP articulated legitimate, nonretaliatory reasons for Dowe's discharge (i.e., her poor job performance, her failure to keep the terms of her probation, and her disruptive behavior). To avoid summary judgment, therefore, Dowe must also forecast evidence sufficient to establish that she was the victim of retaliation (i.e., TAP's nonretaliatory reason was pretextual). As the district court noted, Dowe simply failed to do so. In fact, Dowe admitted that her performance "came up short." (J.A. at 120.)

7

(1) that she has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under the color of state law. See 42 U.S.C.A.§ 1983. The district court concluded that Dowe failed to establish the second element. For the reasons that follow, we agree.

Acting under color of state law is equivalent to that of state action under the Fourteenth Amendment. See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (citing United States v. Price, 383 U.S. 787, 794 n.7 (1966)). The state action requirement "reflects judicial recognition of the fact that `most rights secured by the Constitution are protected only against infringement by governments.'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982) (quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)). "This fundamental limitation on the scope of constitutional guarantees `preserves an area of individual freedom by limiting the reach of federal law' and `avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'" Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619 (1991) (quoting Lugar, 457 U.S. at 936-37). The issue presented in this case is whether TAP engaged in state action when it discharged Dowe.

By asserting that TAP is both regulated and funded by the federal government and, to a lesser extent, by the Commonwealth of Virginia, Dowe contends that she has demonstrated sufficient state involvement to invoke § 1983. We disagree. To the extent Dowe contends that TAP is funded and regulated by the federal government, she is really making the case that TAP was acting under the color of federal law. If so, the claim should have been brought under Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), rather than § 1983. As the Supreme Court made clear in Wheeldin v. Wheeler, 373 U.S. 647 (1963), § 1983 does not apply to federal actors. Id. at 650 n.2. To the extent Dowe contends that TAP is funded and regulated by the Commonwealth, she, for the reasons that follow, has simply failed to demonstrate sufficient state involvement to invoke§ 1983.

Although Dowe refers to TAP as "a creature of statute," she fails to provide even one example of how the Commonwealth regulates Head Start programs. Even assuming that the Head Start program in

8

question is extensively regulated by the Commonwealth, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974) (footnote omitted). Rather, Dowe must also show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Id. at 351; see also Lugar, 457 U.S. at 937 ("[C]onduct allegedly causing the deprivation of a federal right" is only actionable under section 1983 when the conduct is "fairly attributable to the state.").

Dowe also argues that the receipt of state and municipal grants and an exemption from Virginia State personal property taxes provides a sufficient nexus to invoke application of § 1983.**5** As support, Dowe relies principally upon this Court's decision in Edwards v. Maryland State Fair, 628 F.2d 282 (4th Cir. 1980). In Edwards, our finding of state action was predicated on the fact that the corporation running the Maryland State Fair, albeit private, received substantial funding from the State of Maryland. Id. at 285.

Only one year after our decision in Edwards, however, the Supreme Court held that a private nursing home was not a state actor despite the fact that it was financed from almost exclusively public sources. See Blum v. Yaretsky, 457 U.S. 991, 1011 (1981) (noting that the State paid the medical expenses of more than ninety percent of the patients). The following year, the Supreme Court held that a private school funded primarily by the State was not a state actor. See Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982). Of particular importance here, the Supreme Court specifically held that the "receipt of public funds does not make [an agency's] discharge decisions acts of the State." Id. Rather, to establish state action, there must be evidence that the terminations were "compelled or . . . influenced by [the] State." Id. at 841.

---

**5** Dowe does not indicate either how much TAP receives in state and municipal grants or what percentage of TAP's budget is funded by the grants.

9

In light of the Supreme Court's decisions in <u>Blum</u> and <u>Rendell-Baker</u>, it is clear that <u>Edwards</u>, to the extent that it holds that substantial funding by the state is sufficient to invoke § 1983, is no longer good law. <u>See Smith v. Moore</u>, 137 F.3d 808, 821 (4th Cir. 1998) (noting that a decision of this Court is no longer binding if called into question by an intervening decision of the United States Supreme Court); <u>Industrial Turnaround Corp. v. NLRB</u>, 115 F.3d 248, 254 (4th Cir. 1997) (same). It is also worth noting that no Fourth Circuit case has cited <u>Edwards</u> since the Supreme Court decided <u>Blum</u> and <u>Rendell-Baker</u>. Indeed, the Ninth Circuit recently recognized that its counterpart to <u>Edwards</u> was "implicitly overruled by <u>Rendell-Baker</u>." <u>Morse v. North Coast Opportunities, Inc.</u>, 118 F.3d 1338, 1341 (9th Cir. 1997) (recognizing that Supreme Court's holding in <u>Rendell-Baker</u> undermines a prior Ninth Circuit opinion that found significant funding and regulations alone would suffice to establish governmental action); <u>cf. Gilmore v. Salt Lake Community Action Program</u>, 710 F.2d 632, 636 (10th Cir. 1983) (noting that prior decision "seem[ed] questionable in light of [<u>Rendell-Baker</u>]").

The central inquiry in determining whether a private party's conduct will be regarded as action of the government is whether the party can be described "in all fairness" as a state actor. <u>See United Auto Workers v. Gaston Festivals, Inc.</u>, 43 F.3d 902, 906 (4th Cir. 1995). In <u>Nail v. Community Action Agency of Calhoun County</u>, 805 F.2d 1500 (11th Cir. 1986) (per curiam), the Eleventh Circuit was presented with the precise issue facing this Court. A local Head Start program received significant federal and state funding. An employee that had been terminated by the program brought suit under § 1983. Because the personnel decision was not controlled by state regulations, the Eleventh Circuit held that the Head Start program could not be described "in all fairness" as a state actor. <u>See id.</u> at 1501-02 (citing <u>Rendell-Baker</u>, 457 U.S. at 840); <u>see also Morse</u>, 118 F.3d at 1343 (holding that the actions of a local Head Start program could not be fairly attributed to the government).

Like the adverse employment action in <u>Blum</u>, <u>Rendell-Baker</u>, and <u>Nail</u>, the personnel decision here was not controlled by the Commonwealth of Virginia. Typically, a state "can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that

10

the choice must in law be deemed to be that of the State." <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1981). Because Dowe did not present sufficient evidence that the Commonwealth was involved in TAP's decision to terminate her employment, we do not believe that TAP can be described "in all fairness" as a state actor. Accordingly, the district court did not err in granting TAP's motion for summary judgment.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

11