**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARY SHABICA,
Plaintiff-Appellant,

v.

ENGINEERING SALES ASSOCIATES OF
THE SOUTHEAST, INCORPORATED,
Defendant-Appellee.

No. 97-2184

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-96-46-3-P)

Argued: October 30, 1998

Decided: January 19, 1999

Before WILLIAMS and MOTZ, Circuit Judges, and STAMP,
Chief United States District Judge for the
Northern District of West Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Regan Anthony Miller, MURPHY & CHAPMAN, P.A.,
Charlotte, North Carolina, for Appellant. Bruce Merle Simpson,
JAMES, MCELROY & DIEHL, P.A., Charlotte, North Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mary Shabica appeals the district court's grant of judgment as a matter of law in favor of her former employer on her claims of employment discrimination under 42 U.S.C.A. § 2000e et seq. (Title VII) (West 1994 & Supp. 1998). Shabica argues that judgment as a matter of law was inappropriate because she established that she was sexually harassed and that she was terminated for complaining about that harassment. We disagree. The one incident of harassment cited by Shabica was not sufficiently severe or pervasive to create an abusive working environment. Moreover, Shabica was fired for using company funds to pay for personal expenses, not for complaining about the one incident of harassment. Accordingly, we affirm the judgment of the district court.

I.

Shabica was hired by Engineering Sales Associates of the Southeast, Inc. (ESA) in September of 1991. Initially, Shabica worked as a bookkeeper, at a salary of $18,000 per year. At some point, Shabica was promoted to the position of Office Manager, and her salary was increased to $45,000 per year. Art Pue, the president of ESA, traveled extensively. In order to cover company expenses in his absence, Pue gave Shabica signed blank checks. In addition, Pue gave Shabica a credit card that she could use for company expenses.

Leon Philbeck, a sales manager at ESA, worked in the company's warehouse. Although Philbeck and Shabica had some contact with each other while performing their respective duties, Philbeck had no supervisory responsibility over Shabica. On either October 18 or 19, 1994, Philbeck and Shabica entered into a heated discussion in the warehouse. During the exchange, Philbeck called Shabica a "f--ing whore." (J.A. at 190.) Shabica admitted that she also may have used inappropriate language during the incident.

2

After the warehouse incident, Shabica wrote a letter to Pue that contained the alleged details of the incident. At some point, Pue met with Philbeck and they discussed Philbeck's "negative actions." (J.A. at 175.) On February 27, 1995, Pue informed Philbeck that his behavior would not be tolerated and that any repetition of that "conduct [would] be subject to severe disciplinary action, up to and including discharge." (J.A. at 175.) Pue then suspended Philbeck from his job without pay for three days. Thereafter, Shabica and Philbeck maintained a professional relationship while conducting their duties at ESA.

In May 1995, Pue confronted Shabica about her use of company funds for personal expenses. Pue had discovered that Shabica had diverted approximately $50,000 of company funds to her benefit in 1994 and that she had continued to use ESA funds in a similar fashion during 1995. In particular, Shabica used company funds to pay for (1) repairs to her home and rental properties, (2) personal and family automobile expenses, (3) personal credit card expenses, (4) her daughter's wedding reception, and (5) a hot tub.

After confronting Shabica with over 103 checks drafted on the company's bank accounts, Pue informed Shabica that her employment was being terminated. On May 23, 1995, Shabica sent ESA's counsel a letter concerning her termination from ESA. "Since this is an employment at will state, what I would like is a written letter of recommendation from Mr. Pue, a confidentiality agreement stating [that] neither [party] will discuss our past financial arrangements and . . . unemployment benefits." (J.A. at 173.) Shabica did not contend, however, that she was terminated in retaliation for her reporting Philbeck's inappropriate behavior seven months earlier.

On May 24, 1995, Shabica filed a complaint with the EEOC charging that she was "verbally harassed" on October 19, 1994, and that she was terminated for complaining about that harassment. (J.A. at 170.) The EEOC issued Shabica a "Right to Sue" letter on December 7, 1995. Shabica then filed suit in the Superior Court of Mecklenburg County alleging employment discrimination under 42 U.S.C.A. § 2000e et seq. (Title VII) (West 1994 & Supp. 1998), and North Carolina law. In particular, Shabica contends that she was "sexually harassed" and that she was terminated for complaining about that

3

harassment. ESA removed the case to the United States District Court for the Western District of North Carolina due to the existence of a federal question.

At the close of Shabica's evidence, ESA moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. On July 7, 1997, the district court filed a "Memorandum of Decision and Order" granting ESA's motion and entered judgment as a matter of law against Shabica on her federal claims. The district court dismissed Shabica's state law wrongful discharge claim without prejudice. On August 6, 1997, Shabica filed her notice of appeal.

II.

On appeal, Shabica contends that the district court erred in granting ESA's motion for judgment as a matter of law. In actions tried by a jury, the district court may grant a motion for judgment as a matter of law if "a party has been fully heard . . . and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1). As a result, judgment as a matter of law is appropriate when a contrary verdict would necessarily be based on speculation or conjecture. See Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). We review de novo the grant or denial of a motion for judgment as a matter of law. See id. In considering such a motion, we must construe the evidence in the light most favorable to the party against whom the motion is made. See Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir. 1987).

A.

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C.A. § 2000e-2(a)(1) (West 1994). Because the workplace environment is one of the "terms, conditions, or privileges of employment," Meritor Savs. Bank v. Vinson , 477 U.S. 57, 64-67 (1986), Title VII creates a cause of action in favor of persons forced to work in a hostile workplace, see id. at 66 (establishing "that a plaintiff may establish a violation of Title VII by proving that dis-

4

crimination based on sex has created a hostile or abusive work environment"). To make out such a claim, Shabica"must prove: (1) that [s]he was harassed `because of' [her] `sex;' (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." <u>Wrightson v. Pizza Hut of America, Inc.</u>, 99 F.3d 138, 142 (4th Cir. 1996); <u>see also Swentek v. USAIR, Inc.</u>, 830 F.2d 552, 557 (4th Cir. 1987). Here, the district court concluded that Shabica failed to establish the third element. We agree.

The only instance of harassment cited by Shabica during her four years of employment at ESA was the incident in which Philbeck called her a "f--ing whore." That incident, assuming it to be true, is simply insufficient to satisfy the requirement "that the harassment was sufficiently severe or pervasive to create an abusive working environment." <u>Wrightson</u>, 99 F.3d at 142. On the contrary, Shabica's allegations demonstrate only that Philbeck was vulgar. This Court recently explained that

> [n]ot all sexual harassment that is directed at an individual because of his or her sex is actionable. Title VII does not attempt "to purge the workplace of vulgarity." <u>Baskerville v. Culligan Int'l Co.</u>, 50 F.3d 428, 430 (7th Cir. 1995). As the Supreme Court recognized in <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 20 (1993), "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." <u>See also Meritor</u>, 477 U.S. at 67 (recognizing that conduct amounts to actionable sexual harassment only when it is "sufficiently severe or pervasive `to alter the conditions of [the victim's] employment and create an abusive working environment'" (alteration in original) (citation omitted)).

<u>Hopkins v. Baltimore Gas & Elec. Co.</u>, 77 F.3d 745, 753 (4th Cir.) (parallel citations omitted), <u>cert. denied</u>, 117 S. Ct. 70 (1996); <u>see also McWilliams v. Fairfax County Bd. of Supervisors</u>, 72 F.3d 1191, 1196 (4th Cir.) (refusing to recognize a Title VII claim for sexual harassment based solely on the alleged harasser's"vulgarity and

5

insensitivity and meanness of spirit"), cert. denied, 117 S. Ct. 72 (1996). This Court concluded in Hopkins that similar conduct failed to amount to a violation of Title VII. "While we do not approve of [the employer's] apparent willingness to offend and provoke employees with his ambiguously sexual innuendos, Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." Hopkins, 77 F.3d at 754; see also Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995) ("The concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women. . . . It is not designed to purge the workplace of vulgarity.").

Shabica does not allege that she was inappropriately touched, propositioned, flirted with, taunted, or even ogled. See Baskerville, 50 F.3d at 431 ("[Defendant] never touched the plaintiff. He did not invite her, explicitly or by implication, to have sex with him, or to go out on a date with him. He made no threats. He did not expose himself, or show her dirty pictures."). Under these circumstances, "allowing [Shabica's] claim to go to trial would countenance a federal cause of action for mere unpleasantness." Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997). As we recently noted, "Title VII is not a federal guarantee of refinement and sophistication in the workplace . . ., it prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." Id. Thus, the district court did not err in granting ESA judgment as a matter of law.

B.

To prevail on her retaliation claim, Shabica must satisfy the three-step proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, Shabica must establish, by a preponderance of the evidence, a prima facie case of retaliation. Once Shabica has established her prime facie case, the burden shifts to ESA to rebut the presumption of retaliation by articulating non-retaliatory reasons for its actions. Cf. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If ESA meets its burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case," id. at 255 n.10, and Shabica bears the ultimate burden of

6

proving that she has been the victim of retaliation, see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

First, Shabica contends that she established a prima facie case of retaliation under Title VII. To establish a prima facie case of retaliation under Title VII, a plaintiff is required to prove (1) that she engaged in a protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal connection between the first two elements. See Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir.), cert. denied, 117 S. Ct. 70 (1996). We will assume, for purposes of this appeal, that Shabica engaged in protected activity when she complained to Pue about the incident with Philbeck. Cf. Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (filing a complaint with the EEOC is a protected activity). It is also undisputed that an adverse employment action was taken against Shabica. See, e.g., Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 775 (4th Cir. 1997) (recognizing that discharge is an adverse employment action). To survive judgment as a matter of law, therefore, Shabica must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action.

"To satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity." Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998). Here, Shabica simply asserts that she complained about a vulgar remark made by Philbeck and that she was terminated seven months later. Those two facts are insufficient to establish, absent additional evidence, that ESA fired Shabica "because" she complained about Philbeck's vulgar statement. See EEOC v. Clay Printing Co., 955 F.2d 936, 943 (4th Cir. 1992) (noting that bald assertions are not sufficient to create a jury issue). Moreover, the seven month time lapse "negates any inference that a causal connection exists between the two." Dowe, 145 F.3d at 657. As a consequence, Shabica cannot establish the necessary causal connection. It necessarily follows, therefore, that Shabica cannot establish a prima facie case of retaliation. Accordingly, the district court did not err in granting ESA judgment as a matter of law.

Even assuming, however, that Shabica produced evidence sufficient to establish a causal connection between the protected activity

7

and the adverse action -- thereby establishing a prima facie case of retaliation -- ESA articulated a legitimate, nonretaliatory reason for Shabica's discharge (i.e., her use of company funds for her personal use). To avoid judgment as a matter of law, therefore, Shabica must also bring forward evidence sufficient to establish that she was the victim of retaliation (i.e., ESA's nonretaliatory reason was pretextual). As the district court noted, Shabica simply failed to do so.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

8