IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 14, 2012 Session

## JIM FERGUSON

v.

## MIDDLE TENNESSEE STATE UNIVERSITY

**Appeal from the Chancery Court of Rutherford County**
**No. 036336MI     John D. Wootten, Jr., Judge**

**No. M2012-00890-COA-R3-CV - Filed March 28, 2013**

This appeal involves an employee's claim of retaliation for engaging in protected activity. The plaintiff employee filed a lawsuit against his employer, the defendant university, asserting several claims of employment discrimination under state and federal statutes. Subsequently, in a second lawsuit against the university, the plaintiff employee asserted that he suffered adverse job actions after he filed his charge of discrimination with the federal Equal Employment Opportunity Commission and the first discrimination lawsuit.  The alleged adverse job actions included making the employee perform tasks that resulted in physical injuries.  The lawsuits were consolidated and, after an eight-day jury trial, the jury awarded the employee $3 million in compensatory damages on the retaliation claim only. The defendant university appeals.  We hold that, to prove a claim of retaliation for engaging in protected activity, the plaintiff was required to present material evidence to the jury that the decisionmaker, his supervisor at the university, was aware of the plaintiff's protected activity when she took the adverse job actions against the plaintiff.  The plaintiff employee presented no material evidence at trial of such knowledge by his supervisor at the relevant time. Accordingly, we reverse the trial court's judgment and remand for entry of an order dismissing the plaintiff employee's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded for Entry of an Order of Dismissal**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Robert E. Cooper, Jr., William E. Young, William J. Marett, Jr., Leslie Ann Bridges, and Casey N. Miley, Nashville, Tennessee for Defendant/Appellant, Middle Tennessee State University

Michelle M. Benjamin, Winchester, Tennessee for Plaintiff/Appellee, Jim Ferguson

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Jim Ferguson is of Japanese American ancestry. In 1987, Ferguson began working in the maintenance department of Defendant/Appellant Middle Tennessee State University ("MTSU"). Ferguson and other employees were responsible for the maintenance of MTSU's student housing facilities.

In 1997, Dana Byrd became Ferguson's supervisor at MTSU. Prior to that time, Ferguson and Byrd had a good working relationship.

Beginning in approximately 1998, Ferguson began suffering from physical injuries to various parts of his body. The injuries stemmed from specific workplace incidents and also from wear and tear. Between 1998 and 2003, Ferguson's continued injuries resulted in several medical restrictions on Ferguson's work assignments. Although the record indicates some confusion regarding which types of medical restrictions were in place at any given time, it is undisputed that Byrd knew that Ferguson had medical restrictions on his work assignments. Ferguson believed that the work assignments he received from Byrd were contrary to his medical restrictions and believed that his work assignments and workload were more onerous than the work assigned to other maintenance employees. The perceived problems with his work assignments and other incidents at work caused Ferguson to believe that Byrd was discriminating against Ferguson on the basis of his Japanese ancestry.

In August 2002, Ferguson sustained an injury while doing maintenance work. Ferguson was admitted to the hospital and underwent surgery. The recuperation period for Ferguson's surgery lasted a number of months; he was off work until March 2003.

In November or December 2002,[1] during the time in which Ferguson was recuperating from his surgery, he filed a employment discrimination complaint against MTSU with the Equal Employment Opportunity Commission ("EEOC"). The EEOC complaint alleged discrimination on the basis of race and national origin.

In anticipation of Ferguson's return to work, MTSU held several return-to-work meetings with Ferguson and Byrd to ensure that Byrd was aware of the medical restrictions on Ferguson's work in the wake of the surgery. The meetings were well-documented; there were minutes of the meetings in e-mails and Byrd took handwritten notes as well. Neither the minutes nor Byrd's notes mention any reference in the meetings to Ferguson's EEOC complaint. Ferguson returned to work on March 17, 2003.

On March 27, 2003, within days after he returned to work, Ferguson filed his first lawsuit against MTSU in the Chancery Court for Rutherford County, Tennessee. The complaint asserted *inter alia* that Byrd had discriminated against Ferguson on the basis of his race and national origin, in violation of federal and state statutes prohibiting discrimination in employment. It was served on MTSU on April 3, 2003.

After Ferguson filed the lawsuit against MTSU alleging employment discrimination, he continued to report to work. While on duty, Ferguson continued to perform all work tasks Byrd assigned to him, even those he believed were contrary to his medical restrictions. Ferguson would later explain that he did so in order to maintain his medical insurance coverage, because his son was ill and required expensive medical treatment.

In June 2003, after Ferguson had been back at work for a few months, he developed more physical problems, including weakness in his legs. Ferguson continued to work despite these problems. Eventually, the physical problems Ferguson had developed caused him to fall

---

[1]The date on which Ferguson filed his EEOC complaint is unclear in the record. At oral argument, counsel for Ferguson stated that the EEOC complaint was filed in November 2002, but Ferguson's retaliation lawsuit asserts that it was filed in December 2002. Ferguson's appellate brief does not contain a record citation for the EEOC complaint and we decline to search for it in the voluminous record. Though Ferguson's appellate brief includes some citations to the record, Ferguson's brief makes many factual assertions that lack any record citation whatsoever. ***Roberts v. Blount Mem'l Hosp.***, 963 S.W.2d 744, 748 (Tenn. Ct. App. 1997) ("It is not incumbent upon this Court to sift through the record in order to find proof to substantiate the positions of the parties."). A party's failure make adequate citations to the record in his appellate brief is grounds for waiver in some cases. Tenn. R. App. P. 27(a). Despite the deficiencies, we exercise our discretion to consider Ferguson's arguments on appeal.

down a flight of stairs while he was at work at MTSU. Ferguson sustained significant head injuries as a result of the fall. Ferguson never recovered sufficiently to return to work.[2]

In April 2004, well after his fall down the stairs, Ferguson filed a second lawsuit against MTSU. This second lawsuit was also filed in the Chancery Court for Rutherford County. It alleged that MTSU had retaliated against Ferguson for engaging in protected activity, namely, filing his December 2002 EEOC complaint and the March 2003 lawsuit alleging employment discrimination. This second complaint alleged: "Shortly after the plaintiff's return to work [on March 27, 2003], the defendant through actions of Supervisor Dana Byrd after having knowledge of the work-related restrictions required the plaintiff to work outside his restrictions." Ferguson's retaliation complaint then listed specific dates and work assignments in which Byrd purportedly asked Ferguson to perform tasks that were contrary to his medical restrictions, starting on April 10, 2003. Discovery ensued.

Eventually, the Chancery Court for Rutherford County consolidated Ferguson's two lawsuits against MTSU. In October 2008, Ferguson amended his complaint to add a claim for malicious harassment. Discovery continued.

Finally, in November 2011, the trial court conducted an eight-day jury trial on Ferguson's consolidated complaints. The jury heard testimony from seventeen witnesses and approximately 90 exhibits were entered into evidence.

In support of his allegation of retaliation, Ferguson testified at trial that, shortly after he filed his March 2003 lawsuit, "things got pretty heated and pretty rough." After Ferguson finished recuperating from his surgery and returned to work at MTSU, Ferguson said, Byrd gave him work assignments that included moving furniture, moving heavy glass storm doors, installing flood lights and performing other overhead work. All of this, Ferguson testified, was in violation of the medical restrictions placed on him upon his return to work. Asked if he believed that Byrd was retaliating against him because of the employment discrimination lawsuit, Ferguson responded that he filed the second lawsuit claiming retaliation because "Ms. Byrd continue[d] after the lawsuit was filed performing the same actions that made me bring it." In further support of his allegations, Ferguson described an incident that occurred in 2003, after he had filed his discrimination lawsuit and had returned to work after his surgery, in which a Japanese proverb was posted above the time clock. Ferguson testified that he ripped the posted proverb down and did not mention it to anyone:

---

[2] Several years later, Ferguson was diagnosed as having suffered traumatic brain injury as a result of the June 2003 fall down the stairs.

Counsel: Okay. And you didn't bring [the document], take it to anyone, did you?

Ferguson: At the time I had litigation in process, and I was not allowed to speak about it.

Counsel: Mr. Ferguson, the answer to my question was –

Ferguson: Oh, no ma'am, I did not because at the time litigation was – was being conducted and I was not allowed to even talk to anyone in [Human Resources] about it."

Counsel: I want to be careful. Your lawyer instructed you not to talk to anyone; isn't that right?

Ferguson: Yes ma'am.

Counsel: Okay.

Ferguson: And HR told me not to talk to them.

Thus, Ferguson explained at trial that he understood from his attorney and from the MTSU Human Resource Department that he was not permitted to talk to anyone about his pending employment discrimination lawsuit, so he refrained from mentioning it.

Supervisor Byrd also testified at the trial. She denied taking any action against Ferguson because he had filed a lawsuit against MTSU. The questions asked of Byrd, on both direct and cross-examination, did not include any inquiry about when she learned that Ferguson had filed the employment discrimination lawsuits against MTSU or when she learned that Ferguson had filed a complaint with the EEOC. The following excerpt from Byrd's 2006 deposition was read to the jury at trial:

Question: At any point in time did you discuss the complaint with Mr. Ferguson?

Answer: No.

Question: And what was the nature of Mr. Ferguson's complaint?

Answer: I don't really remember for sure. I think there were two, so I may be confused on this. I think he felt like he was discriminated against to his – I think his mother being Japanese. I think that's what it was.

Question: And do you recall about the manner in which he claims he was discriminated?

Answer: I don't understand what you're asking.

Question: . . . Well, you know some people say they've been discriminated because they weren't given a promotion, they were denied a raise. What do you recall was Mr. Ferguson's allegation to support his claim of discrimination?

Answer: I really don't remember anything.

-5-

None of Byrd's deposition testimony read at trial addressed when Byrd learned that Ferguson had filed an EEOC complaint or when Byrd learned that Ferguson had filed an employment discrimination lawsuit against MTSU.

At the close of Ferguson's proof, MTSU moved for a directed verdict on his three claims: employment discrimination on the basis of race and hostile working environment; retaliation for engaging in protected activity; and malicious harassment. The trial court granted a partial directed verdict; it dismissed Ferguson's discrimination claim to the extent that he alleged a hostile working environment. The other claims, including the retaliation claim, were permitted to proceed.

After MTSU put on its proof, it again moved for a directed verdict. The trial court denied this motion and it submitted to the jury Ferguson's remaining claims, i.e., what remained of his claim of discrimination, his claim for malicious harassment, and his claim of retaliation for engaging in a protected activity.

On November 10, 2011, the jury returned its verdict. It found in favor of MTSU on Ferguson's claims of discrimination and malicious harassment. It found in favor of Ferguson on his claim of retaliation for engaging in protected activity, and awarded Ferguson $3 million in compensatory damages. The trial court entered a judgment in this amount on November 29, 2011.

On December 21, 2011, MTSU filed a post-trial motion for directed verdict, partial new trial and/or remittitur. In the motion, MTSU argued, *inter alia*, that Ferguson failed to produce evidence that Byrd, the sole supervisor who was alleged to have engaged in retaliation, had knowledge of Ferguson's protected activity. It also argued that the jury verdict was excessive. The trial court denied MTSU's motion, holding that "there was substantial evidence upon which a reasonable jury could reach its conclusion. . . ." MTSU now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, MTSU presents two issues:

> Whether Defendant is entitled to a judgment as a matter of law on Plaintiff's claim of retaliation under Title VII and the Tennessee Human Rights Act because Plaintiff failed to present any evidence that the decisionmaker knew of the protected activity.

Whether Defendant is entitled to a new trial, or, in the alternative, a remittitur because the jury's $3,000,000 compensatory damages award is excessive and not supported by the evidence.

Since this case was tried before a jury, the findings of fact may be set aside "only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d). In determining whether there is material evidence to support the verdict, this Court must "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Whaley v. Perkins,* 197 S.W.3d 665, 671 (Tenn. 2006); *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978); *Black v. Quinn*, 646 S.W.2d 437, 439-40 (Tenn. Ct. App. 1982)); *see also Riley v. Orr*, No. M2009-01215-COA-R3-CV, 2010 WL 2350475, at *5; 2010 Tenn. App. LEXIS 386, at *12-13 (Tenn. Ct. App. June 11, 2010). In doing so, this Court may not re-weigh the evidence or make a fresh determination of where the preponderance lies on issues of fact. *Barnes*, 48 S.W.3d at 704. Simply put, if there is any material evidence to support the jury's verdict, then the findings of fact must be affirmed. *Barnes*, 48 S.W.3d at 704-05 (quoting *Crabtree Masonry Co.*, 575 S.W.2d at 5); *Riley,* 2010 WL 2350475, at *5; 2010 Tenn. App. LEXIS 386, at *13.

The trial court's conclusions of law are subject to a less deferential standard of review. *Riley,* 2010 WL 2350475, at *5; 2010 Tenn. App. LEXIS 386, at *13 (citing *Rutherford v. S. Coll. of Optometry*, No.W2008-02268-COA-R3-CV, 2009 WL 5064972, at *4; 2009 Tenn. App. LEXIS 882, at *13 (Tenn. Ct. App. Dec. 28, 2009)). This Court reviews the trial court's conclusions of law *de novo* with no presumption of correctness. *Riley,* 2010 WL 2350475, at *4-5; 2010 Tenn. App. LEXIS 386, at *13 (citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002); *Rutherford*, 2009 WL 5064972, at *4; 2009 Tenn. App. LEXIS 882, at *13).

## ANALYSIS

On appeal, MTSU argues that Ferguson did not present any evidence that Byrd had knowledge that Ferguson engaged in a protected activity during the relevant time period, and therefore did not prove a causal connection between the protected activity and any alleged adverse employment action. In response, as a threshold issue, Ferguson argues that MTSU waived any issue regarding Byrd's knowledge because this ground was not included in its motion for directed verdict.

"The trial court must be given the opportunity to correct errors in the conduct of a trial . . . before a litigant will be able to seek reversal on appeal." ***Yeubanks v. Methodist Healthcare-Memphis Hosps.,*** No. W2001-02051-COA-R3-CV, 2003 WL 21392411, at *7; 2003 Tenn. App. LEXIS 437, at *21-22 (Tenn. Ct. App. June 10, 2003) (quoting ***In re South Central Bell***, 779 S.W.2d 375, 380 (Tenn. Ct. App. 1989); ***Rhea v. Marko Constr. Co.***, 652 S.W.2d 332, 334 (Tenn. 1983); ***Pendleton v. Evetts***, 611 S.W.2d 607, 609 (Tenn. Ct. App. 1981); ***Valentine v. Conchemco, Inc.,*** 588 S.W.2d 871, 877 (Tenn. Ct. App. 1979). Thus, an issue raised for the first time on appeal may be deemed waived. ***Black v. Blount***, 938 S.W.2d 394, 403 (Tenn. 1996).

In this case, the issue MTSU raises on appeal was raised specifically and thoroughly addressed in MTSU's post-trial motion seeking a partial new trial. Thus the issue was raised to the trial court and was not waived on appeal. Ferguson's argument is without merit, and we go on to consider MTSU's substantive argument.

Ferguson's retaliation complaint asserts claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Tennessee Human Rights Act ("THRA"). ***See*** 42 U.S.C. §2000(e) (2012); Tenn. Code Ann. § 4-21-311, *et seq*. Ferguson alleges that MTSU retaliated against him for engaging in activity that is protected under Title VII and the THRA. "The THRA prohibits retaliation against an employee who 'has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter.' " ***Castro v. TX Direct, LLC,*** No. W2012-01494-COA-R3-CV, 2013 WL 684785, at *3 (Tenn. Ct. App. Feb 25, 2013) (quoting Tenn. Code Ann. § 4-21-301(1)). ***See also Lin v. Metro. Gov't of Nashville & Davidson County***, No. M2008-00212-COA-R3-CV, 2008 WL 4613559, at *3; 2008 Tenn. App. LEXIS 609, at *7-8 (Tenn. Ct. App. Oct. 10, 2008); ***Frye v. St. Thomas Health Servs.,*** 227 S.W.3d 595, 613 (Tenn. Ct. App. 2007); ***Sawyer v. Memphis Educ. Ass'n***, No. W2006-00437-COA-R3-CV, 2006 WL 3298326, at *5; 2006 Tenn. App. LEXIS 729, at *18 (Tenn. Ct. App. Nov. 14, 2006). These provisions of the THRA parallel similar provisions in Title VII. ***See*** 42 U.S.C. § 2000e-3(a).

To establish a claim of retaliation under the THRA, the plaintiff must prove that: (1) the plaintiff engaged in a protected activity; (2) the exercise of the plaintiff's protected rights was known to the defendant; (3) the defendant thereafter took an adverse job action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse job action. ***Sykes v. Chattanooga Hous. Auth.,*** 343 S.W.3d 18, 29 (Tenn. 2011); ***Sawyer***, 2006 WL 3298326, at *5; 2006 Tenn. App. LEXIS 729, at *16 (citing ***Newsom v. Textron Aerostructures***, 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995)); ***see also Lin***, 2008 WL 4613559, at *3; 2008 Tenn. App. LEXIS 609, at *8-9 (quoting ***Allen v. McPhee***, 240 S.W.3d

803, 820-21 (Tenn. 2007). The plaintiff must establish the same elements to prove a retaliation claim under Title VII. *See Perkins v. Metropolitan Government of Nashville,* 380 S.W.3d 73, 81 (Tenn. 2012).

"It is clearly the law in Tennessee that federal case law on Title VII and related civil rights statutes may be used to interpret the THRA since the stated purpose and intent of the THRA is to execute the policies embodied within the federal anti-discrimination acts." *Regnier v. Metro. Gov't of Nashville & Davidson County*, No. M2004-00351-COA-R3-CV, 2006 WL 1328937, at *7; 2006 Tenn. App. LEXIS 309, at *22 (Tenn. Ct. App. May 11, 2006) (citing Tenn. Code Ann. § 4-21-101(a)(1)); *Barnes*, 48 S.W.3d at 705; *Frazier v. Heritage Fed. Bank for Sav*., 955 S.W.2d 633, 636 n.1 (Tenn. Ct. App. 1997); *Newsom*, 924 S.W.2d at 96). Therefore, we look to federal caselaw applying the federal employment discrimination statutes for guidance.

On appeal, Ferguson argues that "there is substantial evidence to support the jury's finding" that Byrd had knowledge of Ferguson's filing both his EEOC complaint and his discrimination lawsuit. In support of this assertion, Ferguson points first to the excerpts from Byrd's deposition that were read into evidence at trial. Ferguson insists that Byrd's 2006 deposition testimony is direct evidence that Byrd knew that Ferguson filed both his December 2002 EEOC complaint and his March 2003 employment discrimination lawsuit. After reviewing the deposition excerpts read to the jury, we agree that it shows that, by the time Byrd's deposition was taken, she was aware of the EEOC complaint and the first discrimination lawsuit. However, Byrd's deposition testimony, at least the part that was read to the jury, says nothing about *when* Byrd learned of Ferguson's protected activity. Certainly it does not show that Byrd was told about Ferguson's protected activity before she engaged in the alleged adverse job actions, assigning Ferguson the work tasks that were beyond his medical restrictions and were allegedly overly burdensome. Indeed, the only direct evidence in the record is Ferguson's testimony that he *did not* discuss his EEOC complaint or his discrimination lawsuit with Byrd or anyone else, as per instructions from his attorney and the MTSU Human Resources personnel.

Ferguson next argues that he proved knowledge of the protected activity by showing "temporal proximity," that is, he proved that Byrd's assignment of job tasks outside of Ferguson's medical restrictions closely followed the filing of Ferguson's discrimination lawsuit and his EEOC complaint. Ferguson cites *Nguyen v. City of Cleveland,* 229 F. 3d 559, 567 (6th Cir. 2000), in which the Sixth Circuit noted that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference" of retaliation. Ferguson maintains that the jury credited the testimony showing proximity in time between Ferguson's protected activity and Byrd's adverse job actions against Ferguson.

In this way, Ferguson argues, he proved the causal link between Ferguson's protected activity and the adverse employment actions taken against him by Byrd.[3]

Tennessee cases note that circumstantial evidence such as "temporal proximity of the adverse action to the [discrimination] complaint" can be "probative on the issue of causation and retaliatory intent. . . ." *Sykes,* 343 S.W.3d at 29 (citations omitted).[4] This presupposes, however, that the decisionmaker, the person who made the decision to take the alleged adverse job action, has knowledge of the employee's protected activity at the time the adverse job action is taken. Absent such knowledge, there is no way to infer retaliatory animus from the decisionmaker's actions. Tennessee cases and federal cases on retaliation indicate that proof of knowledge of the employee's protected activity is foundational to a claim of retaliation for engaging in protected activity. *See, e.g., id.; Todd v. Shelby County,* No. W2012-00961-COA-R3-CV, 2012 WL 6727536, at *9 (Tenn. Ct. App. Dec. 27, 2012); *Scott v. Eastman Chem*. Co., 275 Fed. Appx. 466, 482 (6th Cir. Tenn. 2008) ("Regardless of whether employer knowledge is a stand-alone element of a prima facie case of retaliation, it is fairly clear from Sixth Circuit case law that employer knowledge of a plaintiff's protected activity is required."); *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) ("[B]y definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish [a prima facie case for retaliation].").

We note that it appears undisputed in this case that some persons within the MTSU administration had knowledge of Ferguson's EEOC complaint and his discrimination lawsuit, since Ferguson testified that he was advised by the MTSU Human Resources personnel not to discuss these matters in the workplace. Some federal courts have held that "general corporate knowledge" is sufficient knowledge to establish a *prima facie* case of retaliation. *See e.g., Gordon v. New York City Bd. of Educ*., 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."); *Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998) ("In order to satisfy the second prong of her retaliation claim, plaintiff need not show that individual decision-makers within the NYCTA knew that she had filed . . . . [an] EEOC complaint.")). Others have held that knowledge of the individual decisionmaker

---

[3]At oral argument on appeal, Ferguson's counsel emphasized that Byrd was aware of the medical restrictions on Ferguson's work, but nevertheless transgressed them. This of course is not relevant to the issue of whether Byrd had knowledge of Ferguson's protected activities.

[4]The *Sykes* Court also lists other types of circumstantial evidence that can show causation and retaliatory intent, such as a pattern of workplace antagonism after the filing of a discrimination complaint. *Sykes,* 343 S.W.3d at 29.

must be shown to prove a claim of retaliation.   *See, e.g., Scott*, 275 Fed. Appx. at 482; *Dowe*, 145 F.3d at 657; *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) ("[U]ltimately, '[i]t is the perception of the decisionmaker which is relevant.'") (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998)).

While we may look to federal law, "we are neither bound nor restricted by it." *Barnes*, 48 S.W.3d at 705.  We respectfully reject the view that "general corporate knowledge" is sufficient foundation for a claim of retaliation in employment for engaging in protected activity.  Retaliatory intent or animus must abide in the mind of a living, breathing person. It is difficult to see how an entity such as a corporation can have intent or animus, retaliatory or otherwise.  Consequently, we are of the view that the plaintiff in a retaliation lawsuit is required to show that the decisionmaker, the individual who took the adverse job action against the plaintiff, had knowledge of the plaintiff's protected activity at the time of the adverse job action.  In the absence of such proof, the plaintiff's claim of retaliation fails. *See Dowe*, 145 F.3d at 657 (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (dismissing claim because no evidence that relevant decisionmaker knew that plaintiff had complained of discrimination); *Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988) (dismissing claim because relevant decisionmaker was unaware that plaintiff had filed a complaint with the EEOC); *Talley v. United States Postal Serv.*, 720 F.2d 505, 508 (8th Cir. 1983) (dismissing claim because no evidence that supervisor who made adverse personnel decision was aware that plaintiff had engaged in protected activity)); *see also Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

The plaintiff in a retaliation case can prove the decisionmaker's knowledge of the protected activity through either direct evidence or circumstantial evidence. *See Scott*, 275 Fed. Appx. at 482 (citing *Proffitt v. Metro. Gov't of Nashville & Davidson County*, 150 Fed. Appx. 439, 442-43 (6th Cir. Tenn. 2005); *Kirkendoll v. McCullough*, No. 3:040789, 2006 WL 14561, at *11; 2006 U.S. Dist. LEXIS 1080, at *29-30 (M.D. Tenn. Jan. 3, 2006) (direct evidence of knowledge is not required, circumstantial evidence is sufficient)). *See also Federated Rural Elec. Ins. Exch. v. Hill*, No. M2009-01772-COA-R3-CV, 2011 WL 3452196, at *6; 2011 Tenn. App. LEXIS 428, at *18 (Tenn. Ct. App. Aug. 8, 2011) (causal link can be inferred from direct evidence or though "compelling circumstantial evidence.") (citing *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992)).  However, the plaintiff must offer *some* material evidence from which a reasonable trier of fact can infer knowledge, and in any case "must do more than 'offer[] only conspiratorial theories . . . or flights of fancy, speculations, hunches, intuitions, or rumors.'" *Proffitt*, 150 Fed. Appx. at 443 (resolving a motion for summary judgment) (quoting *Mulhall v. Ashcoft*, 287 F.3d 543, 552 (6th Cir. 2002); *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)).

Therefore, in this case, to prevail on his claim of retaliation, Ferguson was required to submit to the jury material evidence, either direct or circumstantial, from which a reasonable trier of fact could infer that Byrd knew, when she assigned Ferguson the work in question, that Ferguson had filed an EEOC complaint or that Ferguson had filed an employment discrimination lawsuit. Ferguson has directed our attention to no such evidence in the voluminous record, and we have found none. *See Zang v. Leonard*, 643 S.W.2d 657, 665 (Tenn. Ct. App. 1982) ("Where appellant insists there was no evidence on a certain issue, it is the duty of appellee to cite in the record where such evidence may be found.").

At trial, Ferguson bore the burden of proving each and every element of his claim of retaliation. *Kinsler v. Berkline, LLC,* 320 S.W.3d 796, 800 (Tenn. 2010); *Williams v. Greater Chattanooga Pub. TV Corp.*, 349 S.W.3d 501, 506 (Tenn. Ct. App. 2011). We hold that Ferguson failed to submit to the jury material evidence showing that the decisionmaker, Byrd, had knowledge of Ferguson's protected activity at the time of the alleged adverse job action. In the absence of material evidence on this element of his claim, we must respectfully reverse the judgment of the trial court and remand the cause for an entry of an order dismissing Ferguson's case in its entirety. This holding pretermits all other issues raised on appeal.

## CONCLUSION

The judgment of the trial court is reversed and the matter is remanded with instructions to enter an order dismissing the case in its entirety. Costs on appeal are assessed against Plaintiff/Appellee, Jim Ferguson for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE