**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 18-2253**

_____

THOMAS MILLER,

Plaintiff – Appellant,

v.

MARYLAND DEPARTMENT OF NATURAL RESOURCES, Police,

Defendant – Appellee.

------------------------------

METROPOLITAN     WASHINGTON     EMPLOYMENT     LAWYERS
ASSOCIATION,

Amicus Supporting Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore.
George L. Russell, III, District Judge.  (1:17-cv-02349-GLR)

_____

Argued: April 20, 2020                        Decided:  June 12, 2020

_____

Before AGEE, THACKER, and RUSHING, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

_____

**ARGUED:**  Leizer Z. Goldsmith, THE GOLDSMITH LAW FIRM, LLC, Washington,
D.C., for Appellant.  Roger Lee Wolfe, Jr., OFFICE OF THE ATTORNEY GENERAL

OF MARYLAND, Annapolis, Maryland, for Appellee. **ON BRIEF:** Brian E. Frosh, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee. Rosa M. Koppel, LAW OFFICES OF LARRY J. STEIN, LLC, Fairfax, Virginia; Alan R. Kabat, BERNABEI & KABAT, PLLC, Washington, D.C., for Amicus Metropolitan Washington Employment Lawyers Association.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Thomas Miller ("Appellant") was a former recruit at the Maryland Department of Natural Resources (the "DNR") Police Academy. After he sustained an injury and requested accommodations for his injury, the DNR terminated Appellant's employment. Appellant then filed an employment discrimination claim against the DNR alleging, among other things, unlawful termination based on actual disability, unlawful termination based on perceived disability, and retaliation.

Appellant challenges the district court's dismissal of his First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and its denial of his motions for leave to amend. We affirm the district court's dismissal of Appellant's actual disability claim. But, because the district court held Appellant to an improperly heightened pleading standard, we reverse the dismissal of his perceived disability and retaliation claims. And, because Appellant's proposed amended complaints are not futile, we reverse the district court's denial of his motions to amend his complaint.

I.

During Appellant's Police Academy training on May 23, 2016, he sustained a neck injury which resulted in herniated discs. Appellant informed his DNR supervisors of the injury and requested accommodations for it from Corporal Hunt and Corporal Beckwith.[1] At that time, Corporal Beckwith told Appellant he "would work with [Appellant] to get

---

[1] Appellant does not identify any first names in his First Amended Complaint.

him through the academy." J.A. 4.[2] Until this point, it appears Appellant had been successful at the Police Academy, as he received a satisfactory 90 day evaluation on June 30, 2016. That same day, June 30, 2016, Appellant saw a specialist who ordered that he be placed on restricted upper body training for 30 days at the Police Academy, which the Police Academy allowed until Appellant "received clearance to return to full duty" on July 26, 2016. *Id.* at 7.

However, Appellant claims he was discriminated and retaliated against after making his injury known to the DNR. Specifically, the same day Appellant's specialist ordered the restricted training, Appellant claims he learned from Corporal Hunt that another supervisor, Lieutenant Marconi, suspected Appellant of abusing prescription drugs in order to stay operational through his injury. Appellant denies this allegation. Appellant further alleges that Lieutenant Marconi took a series of hostile actions against him, such as ordering him out of uniform, sending him for work ability exams,[3] cancelling Appellant's appointment with a neck specialist, and ordering him not to take his prescription medication throughout training. Specifically with regard to his medication, Appellant alleges that though his supervisors ordered him not to "possess or use any prescriptions," there was no general rule or policy against prescription medication use by cadets. J.A. 7.

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[3] The record does not describe in detail the nature of these exams. However, it appears Appellant was sent to a "state physician," J.A. 10, who was tasked with evaluating whether Appellant's injury rendered him unfit for duty. At one work ability exam, Appellant claims he was asked whether "he really felt he could fulfill the duties of [a Natural Resources Police] officer." *Id.* at 6.

4

"Around this same time," Appellant alleges that although he had been out of training for over one month on Lieutenant Marconi's orders, he was forced to participate in a "Hell Week" -- a two week group disciplinary program intended to punish the entire class -- because several cadets had been caught with tobacco products, in violation of the Police Academy manual. J.A. 8. Appellant alleges that, as part of "Hell Week," he was "required to complete extra-difficult exercises" and that his requests for accommodations "to avoid re-aggravating his injury" went unanswered. *Id.* Appellant alleges that by August 9, 2016, he was unable to keep up with the strenuous training and fell several times. The next day, August 10, 2016, Appellant made another request to access his prescription medication, but, according to Appellant, that request also went unanswered.

Also on August 9, 2016, Appellant was caught accessing an unauthorized website during an exam at the Police Academy. Though the instructions for the exam were to only access two particular websites to answer the exam questions, Appellant alleges he did not see the instructions written on the board or otherwise know about them. Appellant admits he used Google, which was unauthorized, to answer some of the exam questions. Upon being caught, Appellant marked as wrong the answers he had used Google to obtain and continued with his exam. According to Appellant, a cadet who failed an exam would simply be permitted to retake it. However, Lieutenant Marconi placed Appellant on disciplinary probation for three weeks for "cheating and integrity issues." J.A. 11. During Appellant's probation period, a disciplinary review board was supposed to convene to decide Appellant's punishment. But Appellant alleges in his First Amended Complaint

5

that the review board was never convened.[4]  Appellant avers the review board was not convened because it would have "cleared him of 'cheating,'" a result that "would have been undesirable to Lt. Marconi." *Id.* at 13.

Appellant also alleges that on August 11, 2016, Lieutenant Marconi informed him he was "being placed on full medical restriction and would be referred to the state physician for another work ability exam," and that he was "forbidden from participating in any physical training."[5]  J.A. 10–11.  Appellant claims Lieutenant Marconi was seeking to remove him from duty rather than grant him accommodations for his injuries.

Appellant alleges that, on August 19, 2016, the DNR's Internal Affairs contacted him for an "investigative review" of the alleged cheating.[6]  J.A. 13.  By the end of August, Appellant had completed his disciplinary probation but nonetheless was "ordered to remain out of uniform." *Id.*  On September 2, 2016, Appellant informed Corporal Beckwith that he may need surgery for his herniated discs.  Just four days later, on September 6, 2016,

---

[4] Appellant seeks to amend this allegation in his proposed amended complaints. Specifically, the Second Amended Complaint would allege that Appellant was not informed of the disciplinary review board meeting but that it "was apparently convened on August 12, 2016 [and] consisted of four members[,] Marconi, Hunt, Albert[,] and Jackson." J.A. 211.  It would further allege that the result of the review board was withheld from Appellant, "but it appears that it was not unanimous in finding [Appellant] guilty." *Id.*

[5] It is unclear how long Appellant was taken off duty on this basis. However, Appellant alleges that a "disability panel" recommended he be placed on restricted duty on August 18, 2016.  J.A. 13.

[6] The record does not include further explanation of the nature of this review.

Appellant "was notified that he was being terminated, effective September 20, 2016 – and placed on administrative leave in the meantime." *Id.*

Appellant filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 31, 2016, and received a right to sue letter in May 2017. Appellant timely filed suit in the District of Maryland. In his First Amended Complaint, Appellant alleged the following claims: (1) failure to accommodate; (2) hostile work environment; (3) unlawful termination based on actual disability; (4) unlawful termination based on perceived disability; and (5) retaliation. Each of Appellant's claims were brought pursuant to the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Maryland Fair Employment Practices Act (the "Maryland FEPA")[7]. Appellant subsequently conceded he could not state any claims pursuant to the ADA and could not state a claim for hostile work environment at all. Consequently, the district court dismissed those claims.

As to the remaining claims, on November 21, 2017, the DNR filed a motion to dismiss or for summary judgment. Before filing his opposition to the DNR's motion, Appellant filed a motion for leave to amend and docket a Second Amended Complaint on December 22, 2017. Four days later, on December 26, 2017, he filed a second motion for

---

[7] At oral argument, the DNR argued for the first time that, per our decision in *Pense v. Md. Department of Public Safety & Correctional Services*, 926 F.3d 97 (4th Cir. 2019), it might not have waived its Eleventh Amendment sovereign immunity in relation to Appellant's Maryland FEPA claims. Because this issue was not raised below nor briefed in this appeal, we leave the question of whether *Pense* has any impact on this case for the district court to consider in the first instance on remand.

leave to amend and docket a Third Amended Complaint. Appellant filed his opposition to the DNR's motion that same day. The district court construed the DNR's motion as a motion to dismiss, granted the motion, and denied Appellant's motions to amend in a joint opinion issued on September 26, 2018.[8] Appellant timely appealed.

## II.

We review a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. *See De Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018). We review a denial of leave to amend for abuse of discretion. *See Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018).

## III.

### A.

Before addressing the merits of Appellant's claims, we first address a preliminary issue -- whether the district court properly excluded materials outside the pleadings in its 12(b)(6) analysis.

### 1.

The DNR styled its dispositive motion as a motion to dismiss pursuant to Rule 12(b)(6) or, alternatively, as a motion for summary judgment pursuant to Rule 56 of the

---

[8] Because the district court denied Appellant's motions for leave to amend, it only evaluated Appellant's First Amended Complaint in its 12(b)(6) analysis. Therefore, on the 12(b)(6) issue, we too review only whether Appellant stated a claim in his First Amended Complaint.

Federal Rules of Civil Procedure. The district court has discretion to determine whether to treat such a motion as a 12(b)(6) motion or to convert it to a summary judgment motion. However, we have articulated two requirements that must be met before a district court can convert a motion to dismiss to one for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. A proper Rule 12(d) conversion first requires that all parties "be given some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (internal quotation marks omitted) (citation omitted). This notice exists when "a party is aware that material outside the pleadings is before the court," such as when a motion is captioned in the alternative. *Id.*

In addition to notice, a Rule 12(d) conversion is only proper when the parties have been "afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177 (internal quotation marks omitted) (citation omitted). In the absence of such an opportunity, the court should defer ruling on the motion or deny the motion for summary judgment. Fed. R. Civ. P. 56(d). To oppose a motion for summary judgment on this basis, a plaintiff must submit a Rule 56(d) affidavit showing that he cannot present facts essential to justify the opposition without discovery because those facts are unavailable to him. *See id.*

2.

Here, the district court determined that even though the parties had notice of a possible Rule 12(d) conversion, there had not yet been a reasonable opportunity for discovery. Indeed, Appellant properly filed a Rule 56(d) affidavit identifying facts and materials that would not be available to him absent discovery. Accordingly, the district

9

court concluded it must treat the motion as a motion to dismiss pursuant to Rule 12(b)(6) and exclude any materials outside the pleadings.

Though Appellant does not contest the district court's decision to treat the motion as a 12(b)(6) motion, he argues that the district court should have considered a declaration he attached to his response in opposition to the DNR's dispositive motion. Appellant argues that the declaration provided facts that support his claim of an actual disability and should have been considered as part of the district court's 12(b)(6) analysis. This argument has no merit. The Federal Rules of Civil Procedure make clear that a district court cannot consider materials outside the pleadings on a 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d). Appellant's declaration is plainly outside the pleadings because it was attached to his response in opposition to the DNR's dispositive motion rather than his First Amended Complaint.

Accordingly, we affirm the district court's decision to not consider the declaration. Likewise, we do not consider the declaration in our analysis.

B.

Next, we address the district court's dismissal of Appellant's First Amended Complaint for failure to state a claim.

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotation marks omitted) (citation omitted). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

10

P. 8(a)(2), or does not state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Though "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002), he is "required to allege facts to satisfy the elements of a cause of action created by th[e] statute," *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole and accept the factual allegations in the complaint as true. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, *see Iqbal*, 556 U.S. at 678.

Here, the district court determined Appellant failed to state a claim for failure to accommodate, unlawful termination based on actual or perceived disability, and retaliation.

11

1.

Failure to Accommodate and Unlawful Termination

The district court first determined Appellant could not state a claim pursuant to either the Rehabilitation Act or the Maryland FEPA for both his failure to accommodate and discriminatory discharge claims. Importantly, both the Rehabilitation Act and the Maryland FEPA apply the same standards as the ADA. *Hooven–Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001); *George v. Md. Dep't of Corr. Serv. Div. of Pretrial Det. Serv.*, No. WMN-14-2808, 2015 WL 847416, at *4 n.5 (D. Md. Feb. 25, 2015), *aff'd*, 615 F. App'x 164 (4th Cir. 2015). Accordingly, the Rehabilitation Act and the Maryland FEPA claims need not be analyzed separately. We therefore analyze them using standards set forth in the ADA and related caselaw.

The district court correctly recognized that each of the failure to accommodate and unlawful termination claims first requires Appellant to allege he is a "qualified person with a disability." 42 U.S.C. § 12112(a). But rather than determining whether Appellant sufficiently pled that he was "qualified," the district court first assessed whether Appellant pled a "disability."[9] The ADA Amendments Act ("ADAAA") defines a disability as "(1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)." *Summers*

---

[9] We leave the question of whether Appellant pled sufficient facts to establish that he was "qualified" for the district court to consider on remand.

*v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (citing 42 U.S.C. § 12102(1)). Appellant alleged both an actual disability and that he was regarded as having a disability. The district court held that Appellant failed to state a claim in both respects.

a.

Actual Disability

i.

An individual alleges he has an actual disability when he alleges (1) a physical or mental impairment that (2) substantially limits (3) one or more major life activities. *See* 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). Major life activities also include "the operation of a major bodily function, including but not limited to, . . . neurological . . . functions." *Id.* § 12102(2)(B). For a major life activity to be "substantially limit[ed]," the impairment need only "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Importantly, this standard is much more lenient than the previous ADA standard. Prior to the enactment of the ADAAA in 2009, the regulations and case law held, "'[s]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 198 (2002) (quoting Webster's Third New International

13

Dictionary 2280 (1970) (defining "substantially"). Courts also considered factors such as "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." *Id.* at 196 (alterations and quotation marks omitted). Our review of the record reveals that the district court improperly analyzed Appellant's alleged disability under these outdated standards. However, even using the correct standard, we conclude that Appellant failed to state a claim.

There is no requirement that an actual disability be long lasting or severe. *See* 29 C.F.R. § 1630.2(j)(1)(ix). Determining whether the activity is substantially limited compared to most people "usually will not require scientific, medical, or statistical analysis." *Id.* at § 1630.2(j)(1)(v).

ii.

For his allegation of an actual disability, Appellant pled in his First Amended Complaint that he had suffered a "neck injury" which resulted in a "cervical herniation" and "herniated discs."[10] J.A. 4, 13. Appellant pled "[t]he injury caused him difficulties with lifting, running, sleeping, driving, and pulling and turning his neck." *Id.* at 4. As the district court recognized, at least "lifting" and "sleeping" are considered major life activities. *See* 42 U.S.C. § 12102(2)(A). However, the district court determined Appellant failed to allege that he was substantially limited as a result of his injury because he only

---

[10] Though the district court treated these as two separate injuries, Appellant clarified in his opening brief that he only sustained one neck injury which resulted in herniated discs in his cervical spine.

alleged it "caused him difficulties." J.A. 472. Though he pled no more facts relating to his difficulties lifting and sleeping, Appellant argues the district court was required to infer the "difficulties" he encountered were substantial limitations. Specifically, Appellant argues the following two paragraphs from the "Statement of Claims" section of his First Amended Complaint were sufficient to meet the pleading standard:

> 143. An individual with a disability includes a person with a physical impairment that substantially limits one or more major life activities…

> 145. As indicated above, at all times relevant to this complaint, [Appellant] was a person with a disability and/or was regarded as having a disability.

*Id.* at 15.

iii.

We conclude Appellant's allegations are inadequate to satisfy the pleading standard. Though a substantial limitation need not be severe, Appellant's claim that he suffered "difficulties" lifting and sleeping falls well short of alleging he was limited "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Moreover, Appellant's claim that the district court was required to infer that his "difficulties" were substantial limitations -- merely because he defined "disability" and said he had one -- clearly fails. This is exactly the type of conclusory allegation devoid of any reference to actual events that will not survive a motion to dismiss. *See United Black Firefighters*, 604 F.2d at 847.

15

Accordingly, we affirm the district court's conclusion that Appellant failed to state an actual disability claim in the First Amended Complaint.[11]

b.

Regarded As Having a Disability

The district court next determined Appellant failed to state a claim that the DNR regarded him as having a disability.

i.

Pursuant to the ADAAA, an individual is regarded as having a disability "if the individual establishes that he or she has been subjected to an action prohibited under this chapter[12] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). But a plaintiff cannot ultimately succeed on a regarded as claim if the impairment is "transitory and minor." *Id.* § 12012(3)(B). The district court dismissed Appellant's regarded as claim on this basis.

---

[11] As discussed above, the district court correctly disregarded Appellant's declaration in its 12(b)(6) analysis. However, we are troubled that the court reviewed the declaration and did not provide Appellant an opportunity to amend his First Amended Complaint to include the more specific factual allegations it contains. Though we express no opinion at this juncture as to whether such an amendment would allow Appellant to survive a 12(b)(6) review, we nonetheless note that the declaration included more specific facts in support of Appellant's actual disability claim.

[12] "Prohibited actions include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment." 29 C.F.R. § 1630.2(l)(1).

We reverse because a plaintiff need not overcome the "transitory and minor" hurdle at the motion to dismiss stage. Instead, a defendant may raise the transitory and minor rule as a defense at the summary judgment and trial stages of the case.

To state a claim, a plaintiff must "allege facts to satisfy the elements of a cause of action created by th[e] statute," *McCleary-Evans*, 780 F.3d at 585. However, a plaintiff is not required to plead rebuttals to anticipated defenses in order to survive a motion to dismiss. The statute only requires a plaintiff to "establish[] that he or she (1) has been subjected to an action prohibited under this chapter (2) because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Indeed, the EEOC regulations interpreting the ADAAA include the "transitory and minor" rule in the section listing defenses. *See* 29 C.F.R. § 1630.15(f) ("It may *be a defense* to . . . the 'regarded as' prong of the definition of a disability that the impairment is . . . or would be . . . 'transitory and minor.' To establish this defense, *a covered entity must demonstrate* that the impairment is both [objectively] 'transitory' and 'minor.'") (emphasis supplied). Thus, because the statute does not require the plaintiff to demonstrate his impairment is not transitory or minor, the district court improperly evaluated this portion of Appellant's claim.

ii.

On de novo review, we hold Appellant stated a claim under the "regarded as" prong. First, Appellant clearly pled he was subjected to a prohibited action because he alleged his employment was terminated. And, in the aggregate, Appellant's allegations that his employment was terminated because of an actual or perceived impairment are sufficient

17

for pleading purposes. Appellant alleged that he had received a satisfactory 90 day evaluation on June 30, 2016, the same day a Specialist ordered restricted upper body physical training for 30 days. Subsequent to being placed on restrictions, Appellant alleged he was baselessly accused of abusing prescription drugs, ordered out of uniform, sent for two separate work ability exams, and wrongly accused of cheating on a test.

Finally, though the DNR asserts Appellant's employment was terminated for cheating, Appellant alleged this reasoning was a "pretext for disability discrimination and retaliation." J.A. 11 ¶ 102. Indeed, Appellant was told of his termination just four days after informing one of his trainers he may need surgery for his neck injury. These allegations, taken together, make out "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft*, 556 U.S. at 678.

Accordingly, we reverse the district court and hold Appellant stated a claim under the regarded as prong in the First Amended Complaint.

2.

Retaliation Claim

a.

To state a claim for retaliation, a plaintiff must allege "(1) that [he] engaged in protected activity; (2) that [his] employer took an adverse action against [him]; and (3) that a causal connection existed between the adverse activity and the protected action." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 578 (4th Cir. 2015) (citation omitted).

18

Relevant here, to demonstrate a causal connection, a plaintiff must establish "but-for" causation. *See Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235 (4th Cir. 2016).

b.

The parties agree Appellant alleged that he engaged in protected activity by requesting accommodations, and that his employer took an adverse action against him by terminating his employment. However, the parties dispute whether Appellant alleged a causal connection between the two. The district court determined he did not do so for two reasons.

i.

First, the district court determined Appellant had not sufficiently pled a causal connection because "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie case*" of retaliation. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis supplied). In his First Amended Complaint, Appellant alleged he had discussed his requested accommodations with Corporal Hunt and Corporal Beckwith, and that Lieutenant Marconi was also aware of his injuries and need for restricted duty. However, Appellant did not include any allegations regarding who made the decision to terminate him or who informed him that he was being terminated. Appellant alleged only that "[o]n September 6, 2016, [he] was notified that he was being terminated." J.A. 13 ¶ 127. Because Appellant did not identify who made the decision to terminate him, or whether that person had knowledge of his requests for accommodations, the district court held Appellant failed to allege a causal connection.

19

While we agree Appellant failed to allege knowledge on the part of a decision maker, we disagree that Appellant was required to make this showing at the pleading stage. Importantly, "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," *Swierkiewicz*, 534 U.S. at 515. The *Swierkiewicz* Court recognized that it would "not [be] appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* frame-work does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Id.* at 511 (citation omitted). In *McCleary-Evans*, we explained how this rule can be harmonized with the *Twombly-Iqbal* pleading standard. Specifically, we recognized that a prima facie case "may require demonstrating more elements than are otherwise required to state a claim for relief." *McCleary-Evans*, 780 F.3d at 584. Thus, rather than pleading all elements of a prima facie case, a plaintiff need only plead "facts to satisfy the elements of a cause of action created by th[e] statute." *Id.* at 585.

In this case, the knowledge requirement imposed by the district court is specifically regarded as an element of a prima facie case. *See Dowe*, 145 F.3d at 656 (holding "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie case*" of retaliation (emphasis supplied)). The statute does not require proof of this element at the pleading stage; it only requires some facts supporting a "reasonable inference" of causation. *See Ashcroft*, 556 U.S. at 678 (holding a claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, the district court erred in holding Appellant to this standard at the pleading stage.

## ii.

The district court also considered whether, absent the knowledge requirement, Appellant pled facts establishing but-for causation and held that he had not done so. In doing so, the district court focused only on the temporal proximity between Appellant's requests for accommodations and the decision to terminate his employment. Appellant alleged he began asking for accommodations in late May 2016, after his neck injury occurred. His last alleged accommodation request was on August 10, 2016, when he requested access to his prescription medications. According to the First Amended Complaint, Appellant was informed of his termination on September 6, 2016. However, the district court assumed the decision was made on August 12, 2016, as Appellant claimed in his opposition to the DNR's motion to dismiss.[13] The district court determined this temporal proximity -- from late May 2016 to August 10, 2016 -- was insufficient to establish causation because "temporal proximity alone is insufficient to establish the third element of causation." J.A. 477 (citing *Brady v. Bd. of Educ.*, 222 F. Supp.3d 459, 475 (D. Md. 2016)).

---

[13] Though this fact is not part of the pleadings, it seems the district court was attempting to give Appellant the benefit of the doubt as to the date the decision was made.

While we have recognized the general rule that temporal proximity alone cannot create a genuine dispute as to causation, we have also held that when the temporal proximity is particularly close, it "weighs heavily in favor of finding" at least a genuine dispute as to causation. *Jacobs*, 780 F.3d at 575. In *Jacobs*, the sufficiently "close temporal proximity" between the request for accommodations and the termination was three weeks. *Id.* Of course, at this stage, we are not concerned with whether a genuine dispute exists so long as the facts alleged, taken as true, would support a reasonable inference of causation. Taking the facts as pled in the First Amended Complaint, Appellant's employment was terminated just one day short of four weeks after his last accommodation request. At this stage, we are of the view that the temporal proximity is sufficiently close to "weigh heavily" in support of concluding that Appellant pled facts establishing causation.

Further, Appellant pled more than mere temporal proximity to establish causation. Accepting Appellant's allegations as true, as we must, Appellant's supervisors were aware of his need for accommodations but denied them. After they became aware of Appellant's injury, his supervisors began falsely accusing him of drug use and cheating after he expressed a need for accommodations. And, according to Appellant, the DNR used the purported cheating as a pretext to fire him when a trainee who failed the exam would be permitted to retake it. These allegations support an inference that Appellant was terminated in retaliation for requesting accommodations.

Accordingly, we reverse the district court and hold Appellant alleged sufficient facts to state a claim for retaliation in the First Amended Complaint.

22

C.

Finally, we address the district court's denial of Appellant's motions for leave to file his Second and Third Amended Complaints.

1.

"Motions for leave to amend should generally be granted in light of this Circuit's policy to liberally allow amendment." *Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (internal quotation marks omitted). And, Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave when justice so requires." However, a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Relevant here, "[l]eave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Id.* at 510. For example, if an amended complaint could not survive a motion to dismiss for failure to state a claim, it is properly denied for frivolity. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

2.

The district court determined that both the proposed Second and Third Amended Complaints were futile because they would not resolve the identified pleading defects, and therefore would not survive a motion to dismiss. Specifically, with regard to the Second Amended Complaint, the district court noted that Appellant requested to add allegations to demonstrate he had exhausted his administrative remedies prior to filing this lawsuit. The

district court determined this amendment was futile because, even with the added allegations, Appellant had not resolved the other pleading deficiencies. Appellant points out, however, that he sought to add more than just the exhaustion allegations to his Second Amended Complaint. Indeed, he sought to add allegations that Lieutenant Marconi was a member of the disciplinary review board that found him guilty of cheating, and that Lieutenant Marconi "directed hostility at [Appellant] pertaining to his medical impairment." J.A. 219–20 ¶ 227. Appellant also added an allegation that his right arm would twitch and "it hurt to raise a firearm to eye level." *Id.* at 202 ¶ 74. With regard to the proposed Third Amended Complaint, Appellant sought to add that his "neurological system was substantially limited by pain from the injury," *id.* at 310 ¶ 67, and "[t]he impairment substantially limited his neurological function . . . through pain," *id.* at 323 ¶ 200. Appellant also sought to remove his hostile work environment claim.

3.

We hold that the district court abused its discretion in denying Appellant leave to amend. First, at least with regard to the proposed Second Amended Complaint, the district court failed to recognize and consider each of the amendments Appellant sought to make. And, by alleging additional facts about Lieutenant Marconi, Appellant attempted to satisfy the district court's erroneous requirement that he allege a causal connection at the pleading stage. In any event, neither of the proposed Amended Complaints would be futile on the ground that they fail to state a claim. Indeed, we have already held that Appellant stated claims for both unlawful termination based on perceived disability and retaliation in his First Amended Complaint. In addition to the supporting facts Appellant seeks to allege in

24

those claims, Appellant's proposed Amended Complaints also allege additional facts which may support his claims for failure to accommodate and unlawful termination based on actual disability. Because leave to amend is to be "freely granted," Fed. R. Civ. P. 15(a)(2), we hold that the district court abused its discretion in denying Appellant's motions. Appellant should be permitted to amend his First Amended Complaint on remand.

IV.

For the foregoing reasons, the decision of the district court is

*AFFRIMED IN PART, REVERSED IN PART, and REMANDED*.