**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 20-1961**

─────────────

DOROTHY A. SEABROOK,

> Plaintiff – Appellant,

v.

DANIEL P. DRISCOLL, Secretary of the Army,

> Defendant – Appellee.

─────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever, District Judge.  (5:19-cv-00236-D)

─────────────

Argued:  December 5, 2023                                Decided:  August 4, 2025

─────────────

Before GREGORY, RICHARDSON, and RUSHING, Circuit Judges.

─────────────

Affirmed by published opinion.  Judge Rushing wrote the majority opinion, in which Judge Richardson joined.  Judge Gregory wrote an opinion concurring in part and dissenting in part.

─────────────

**ARGUED:** Dennis L. Friedman, Philadelphia, Pennsylvania, for Appellant.  Rudy E. Renfer, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:**  Robert J. Higdon, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

─────────────

RUSHING, Circuit Judge:

Dorothy Seabrook sued the Secretary of the Army under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging discrimination based on her race, color, sex, and protected activities. The district court dismissed the complaint for failure to state a claim of disparate treatment, hostile work environment, or retaliation. We affirm.

I.

Seabrook, a black woman, formerly was the Family Programs Manager for the U.S. Army Reserve Command at Fort Bragg, North Carolina.[1] In September 2013, Seabrook's first-level supervisor, Sonia Wriglesworth, convened a meeting to evaluate the performance of an employee named Scott Hamilton. Seabrook attended the meeting along with an Army labor law attorney, Tim Johnson, and an Army employee relations representative, Ann Clark. Because Seabrook would soon take over as Hamilton's supervisor, Clark advised Seabrook to contact her before pursuing corrective discipline against Hamilton.

About a month later, Clark recommended performance counseling and then suspension as a roadmap of progressive disciplinary measures for Hamilton. Clark drafted a counseling statement which Seabrook gave Hamilton in January 2014. Seabrook continued to provide Clark with documentation regarding Hamilton's unsatisfactory performance, and Clark drafted a notice of proposed suspension. But in March 2014, Clark placed Hamilton's notice of proposed suspension on hold. According to Seabrook,

---

[1] The facts are taken from Seabrook's amended complaint and its attachments. *See E.I. duPont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

2

attorney Johnson advised Clark to halt Hamilton's disciplinary proceedings as part of a coordinated agenda to intentionally undermine Seabrook's supervisory authority.

Also in early 2014, the Army began an investigation into complaints from employees about Seabrook's conduct and the work environment that existed under her and Wriglesworth's leadership at the Family Programs Division. Seabrook says she was not informed about the allegations. After a five-month investigation, the Army concluded that Seabrook's "negative leadership" had "created a toxic work environment" and that she "made inappropriate or belittling comments . . . and/or made inappropriate physical contact" with employees, all of which was conduct "unbecoming a federal employee and supervisor." J.A. 161–162.

As a result, on July 30, 2014, Seabrook's second-level supervisor, James Balocki,[2] issued her a notice of proposed two-week suspension and ordered her to leave the building. Seabrook was escorted out during work hours and in view of other employees. Afterward, her husband—who worked at Fort Jackson in South Carolina—was called into his supervisor's office and asked about Seabrook's suspension. Other personnel also heard about Seabrook's suspension. Seabrook denied the investigative findings and contested the suspension with her commanding officer, Major General Visot, but he upheld the decision. Later that year, Seabrook agreed to a reassignment to another division within Army Reserve Command.

---

[2] Balocki became Seabrook's second-level supervisor in January 2014.

3

On January 6, 2015, Seabrook filed an Equal Employment Opportunity (EEO) complaint, alleging that the Army discriminated against her on account of her race, color, and sex by undermining her authority, investigating her, and suspending her. A month later, Balocki provided Seabrook her performance evaluation for the period from July 2013 through June 2014. Based on the investigation, the evaluation rated Seabrook as "needs improvement." Seabrook believed the low rating was retaliation for her EEO complaint and filed a second EEO complaint alleging as much on May 5, 2015.

The EEOC investigated both of Seabrook's complaints and an administrative law judge found no discrimination by the Army. The Commission affirmed that finding on appeal and denied Seabrook's motion to reconsider.

Undeterred, Seabrook filed a complaint pro se in federal court, which the district court liberally construed as alleging the Army discriminated against her in violation of Title VII by treating her differently than similarly situated employees, creating a hostile work environment, and retaliating against her. The district court dismissed Seabrook's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and denied Seabrook's motion to alter or amend the judgment under Rule 59(e).[3] We have

---

[3] In her counseled opening brief on appeal, Seabrook identifies the standard of review for Rule 59(e) rulings but does not develop any argument that the district court abused its discretion in denying her motion. We therefore consider the argument waived. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop [its] argument—even if [its] brief takes a passing shot at the issue." (internal quotation marks omitted)).

4

jurisdiction to consider Seabrook's appeal from the district court's final judgment.[4]  28 U.S.C. § 1291.

## II.

We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6). *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). "In conducting this review, we take the facts in the light most favorable to plaintiff, but we need not accept" as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

We also construe Seabrook's pro se pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020); *see also Giarratano*, 521 F.3d at 304 n.5 (explaining that pro se pleadings, like counseled ones, must "contain 'more than labels and conclusions'" (quoting *Twombly*, 550 U.S. at 555)).

---

[4] We placed this appeal in abeyance for *Britt v. DeJoy*, 45 F.4th 790 (4th Cir. 2022) (en banc).  Pursuant to that decision, the district court's order dismissing Seabrook's complaint without prejudice and without granting leave to further amend was final and appealable. *See id.* at 798.

III.

Like the district court, we construe Seabrook's pro se complaint to allege disparate treatment, hostile work environment, and retaliation in violation of Title VII. We address each claim in turn.

A.

Title VII forbids an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Seabrook alleges that the Army discriminated against her because of her race, color, and sex when she was suspended for conduct unbecoming a federal employee and supervisor and was escorted out of the building.

First, Seabrook does not allege facts to plausibly state a claim that the Army disciplined her because of her race, color, or sex. The attachments to Seabrook's amended complaint reveal she was disciplined because an investigation showed she created a toxic work environment and made inappropriate or belittling comments and inappropriate physical contact with staff. Seabrook claims she did "not have a record of poor performance or conduct as a toxic leader" and so "it could only be" race, color, or sex "that would motivate management to take this action." J.A. 164–165. Although Seabrook disputes the investigative findings, she has alleged no factual basis to support the conclusion that discriminatory bias, rather than the outcome of the investigation, was the

6

Army's true motivation for disciplining her.[5]  *See Bing*, 959 F.3d at 617; *McCleary-Evans v. Md. Dept. of Transp.*, 780 F.3d 582, 585–586 (4th Cir. 2015); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

Seabrook asserts that discriminatory motivation is apparent from the "preferential treatment" shown to her subordinate Hamilton, a white man, who was "involved in misconduct and performance issues" but "was never investigated." J.A. 165.  She alleges that Hamilton was among the employees whose complaints about her "mistreatment" led the Army to investigate her.  J.A. 157.

A claim of discrimination in the enforcement of employee disciplinary measures by reference to a comparator requires that (1) the plaintiff is a member of a protected class, (2) the plaintiff's prohibited conduct was comparable in seriousness to misconduct of employees outside the protected class, and (3) the disciplinary measures enforced against the plaintiff were more severe than those enforced against the other employees.  *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).  Seabrook has characterized Hamilton's misconduct as "[n]on-performance and failure to meet deadlines."  J.A. 157.  She issued him a counseling statement for that conduct, but alleges he was not "investigated."  J.A. 165.  Allegations that Hamilton was counseled but not investigated for performance problems and missing deadlines while Seabrook, his supervisor, was investigated for negative leadership and creating a toxic work environment after multiple

---

[5] Likewise, to the extent Seabrook claims her poor performance review for that time period was motivated by discriminatory bias, she has failed to plead facts sufficient to state a claim.

7

subordinates complained do not raise a plausible inference that the Army investigated Seabrook because of her race, color, or sex.

Second, Seabrook alleges disparate punishment based on the severity of her discipline relative to two white employees she asserts the Army treated more leniently. When a plaintiff offers a comparator, the plausibility of her claim depends upon whether that comparator is similarly situated. Seabrook's allegations about the two comparators she proposes—a white man named Chris Hamilton and a white woman named Kim[6]—are insufficient to provide a meaningful point of comparison. Both work for different departments in the Army: Chris for the Continuous Process Improvement Office and Kim for the Services and Infrastructure Core Enterprise. Seabrook's complaint and attachments are silent regarding their jobs, whether their roles were similar to her leadership position, and the identity of the supervisors who disciplined them. The most specific allegation Seabrook offers—that both Chris and Kim threatened their co-workers—cuts against her disparate treatment claim. While Chris and Kim uttered verbal threats, Seabrook was suspended in part for improper physical contact with her subordinates, a more severe offense that could justify the purportedly disparate discipline, including Seabrook's physical escort from the building. Seabrook's comparator allegations do not raise a right to relief on her disparate punishment claim "above a speculative level." *Twombly*, 550 U.S. at 555.

---

[6] Seabrook does not identify Kim's last name.

B.

We next consider Seabrook's hostile work environment claim. She alleges the Army created a hostile work environment when it undermined her supervisory authority by halting her desired disciplinary action against Scott Hamilton, investigated her without first informing her about the complaints against her, suspended her for fourteen days, escorted her from the building, and disclosed her suspension to others.

"A hostile environment that violates Title VII 'exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Holloway*, 32 F.4th at 300 (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc)). To state a claim, Seabrook must allege that (1) she experienced unwelcome harassment, (2) the harassment was based on her race, color, or sex, (3) the harassment "'was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere,'" and (4) there is some basis for imposing liability on the employer. *Id.* (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).

Harassment is "based on" race, color, or sex when an employee would not have experienced the harassment "but for" her protected characteristic. *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 142 (4th Cir. 2007) (internal quotation marks omitted). Seabrook has failed to allege facts supporting but-for causation. Specifically, Seabrook asserts that, "[i]n the absence of" any other reason for the Army to halt Hamilton's discipline, investigate and suspend her, and disclose her suspension, she "believe[s] it was race[, color,

9

or sex] that motivated" the alleged harassment. J.A. 159, 160, 161, 164, 165, 168. That does not suffice. "Being aware of no alternative explanation and guessing that conduct is racially motivated does not amount to pleading actual facts to support a claim of racial discrimination. To the contrary, they constitute only speculation as to [the employer's] motivation." *Bing*, 959 F.3d at 618.

"Regarding the third element, '[w]hether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position.'" *Holloway*, 32 F.4th at 300 (quoting *Boyer-Liberto*, 786 F.3d at 277). "That determination is made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks omitted). "'[R]ude treatment,' 'callous behavior,' or 'routine difference of opinion and personality conflict,' without more, will not suffice." *Holloway*, 32 F.4th at 301 (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–316 (4th Cir. 2008)).

Seabrook's allegations fail to satisfy this element as well. None of the actions she identifies are objectively abusive, humiliating, or physically threatening. They instead reflect a difference of opinion about how to discipline Hamilton and the steps taken to investigate Seabrook's negative leadership and execute her own discipline. *See, e.g., Holloway*, 32 F.4th at 301 (affirming dismissal of hostile environment claim when employer surveyed plaintiff's employees about, and criticized, plaintiff's leadership); *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (affirming dismissal of hostile

10

environment claim when plaintiff alleged her employer investigated her unjustly).  The Army's alleged behavior does not rise to an objective level of abuse sufficient to sustain a hostile work environment claim under Title VII.

C.

Lastly, Seabrook claims the Army retaliated against her for instigating and participating in EEO proceedings.  Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *see also Holloway*, 32 F.4th at 299–300.  To plead a retaliation claim, Seabrook must allege a causal link between her protected activity and the adverse employment action, such that the latter happened "because" of the former.

Seabrook alleges that her investigation, suspension, and poor performance evaluation were retaliation for participating as a witness in Wriglesworth's EEO activity and for filing her own EEO complaints.[7]  According to Seabrook, however, the retaliatory individuals were not aware of her participation as a witness in Wriglesworth's EEO proceeding until after they investigated Seabrook and issued the notice of proposed suspension.  And Seabrook had not filed her own EEO complaints at that point.  So the

---

[7] The dissent disagrees that one basis for Seabrook's retaliation claim is her participation as a witness in Wriglesworth's EEO activity.  *See* Dissenting Op. 17–20. Instead, the dissent would consider only Seabrook's January 2015 EEO complaint.  *See id.* at 19.  Construing Seabrook's complaint and attachments more liberally, we assess both Seabrook's own EEO complaints and her participation in Wriglesworth's EEO activity as potential bases for her retaliation claim.

11

investigation and suspension could not have been retaliatory. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("[B]y definition, an employer cannot take action because of a factor of which it is unaware . . . .").

Regarding Seabrook's poor performance review, Balocki issued her review (for the period July 2013 through June 2014) in February 2015. That was approximately five to six months after Balocki and others became aware of Seabrook's participation as a witness in Wriglesworth's EEO proceeding. And it was approximately one month after Seabrook filed her first EEO complaint.[8]

"Temporal proximity between an employee's charge of discrimination and an adverse employment action can support an inference that the employer acted 'because' of that charge." *Holloway*, 32 F.4th at 300 (quoting 42 U.S.C. § 2000e-3(a)). In prior cases "we have held that 'a three-month period between the protected activity and the adverse action,' without more, 'does not support a finding that there is a causal link.'" *Id.* (quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021)). Seabrook has not alleged any "intervening events" to bridge the "prohibitively long temporal gap" between Balocki becoming aware of her participation in Wriglesworth's EEO proceeding and her poor performance evaluation. *Id.*

As for a connection between Seabrook's February performance review and her January EEO complaint, Seabrook does not allege facts to support an inference that Balocki

---

[8] Balocki delivered the performance evaluation before Seabrook filed her second EEO complaint, so her poor review could not have been retaliation for that later complaint. *See Dowe*, 145 F.3d at 657.

was aware of her complaint when he issued her review. Seabrook generally asserts that "Balocki is made aware of all EEO activity within the command" "[b]y virtue of his position as Command Executive Officer and Director, Services Infrastructure Core Enterprise." J.A. 194. We find this insufficient to raise a nonspeculative inference that Balocki knew about Seabrook's complaint when he issued her performance review a month later, much less that he rated her poorly because of it.[9] *See Dowe*, 145 F.3d at 657 ("[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary . . . .").

The dissent identifies three allegations to support a causal link between Seabrook's January EEO complaint and her poor performance review, but none plausibly allege a causal connection. *See* Dissenting Op. 20. First, although Balocki was no longer in Seabrook's supervisory chain in February 2015, the review was for July 2013 to June 2014, a period during which he was Seabrook's second level supervisor. *See* J.A. 152 (alleging that Balocki's "duties and responsibilities did not end" when Seabrook was transferred because she had not received a performance evaluation). Second, the dissent notes a statement that Balocki wanted appraisals from first line supervisors for all employees he was responsible for rating by the end of the review period in June, *see* J.A. 56, and February

---

[9] The dissent offers an allegation that Seabrook never makes: that Balocki would have been aware of Seabrook's EEO complaint within a month of its filing because "he is a named party." Dissenting Op. 21. To be clear, the named parties to the EEO complaint were Seabrook and the Department of the Army. Within the EEO complaint, Seabrook claimed Balocki and others discriminated against her. But she has not alleged that Balocki or the others identified in the EEO complaint would have received notice of it before her poor performance evaluation.

13

is eight months after June. Naturally, an evaluation can occur only after the conclusion of the review period, and Seabrook does not allege that Balocki transgressed any deadline or agency practice by delivering her review in February. Lastly, the dissent asserts Seabrook was not "notified that her performance was less than satisfactory" during the evaluation period.[10] Dissenting Op. 20. Yet Seabrook has pled that, during the review period, the Army investigated complaints against her and concluded her "negative leadership" had "created a toxic work environment" and that she "made inappropriate or belittling comments . . . and/or made inappropriate physical contact" with employees, all of which was conduct "unbecoming a federal employee and supervisor." J.A. 161–162. The "more likely explanation" for Seabrook's poor review is the Army's finding that her negative leadership created a toxic work environment during the review period. *Iqbal*, 556 U.S. at 681. She has not nudged her claim of retaliation "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

IV.

Having liberally construed Seabrook's complaint and considered the documents attached thereto, we agree with the district court that she has failed to state any claim upon which relief can be granted. The district court correctly dismissed her complaint, and its judgment is

*AFFIRMED*.

---

[10] Seabrook does not allege that "counsel[ing]" or an "improvement plan" must occur or ordinarily occurs before a poor performance review is delivered. *See* Dissenting Op. 20.

14

GREGORY, Circuit Judge, concurring in part and dissenting in part:

The majority's holding that Seabrook's retaliation and disparate treatment claims fail at the motion to dismiss stage represents an astonishing departure from circuit precedent. And its impact on plaintiffs bringing retaliation and disparate treatment claims in the future will be devastating.

Seabrook, a supervisor with the Army, attempted to obtain information regarding how to initiate a disciplinary action against a white male employee who had conduct and performance issues. J.A. 157. Without success, Seabrook was advised not to issue a rating lower than 3[1] to the white male employee without prior counseling and the issuance of a performance improvement plan. J.A. 151. Seabrook was further advised to re-contact the Army before she initiated counseling and the issuance of a performance improvement plan to this white male employee. J.A. 151. Seabrook, as directed, continued to contact the Army regarding the white male employee's continuing cycle of non-performance and creating a hostile work environment, but the Army declined to suspend or discipline him. J.A. 151–52, 157–58.

Sometime between June 2013 and early-to-mid 2014, Seabrook served as a supporting witness for her then first-line level supervisor, Sonia Wriglesworth, a Hispanic woman, in one of Wriglesworth's EEO discrimination suits against the Army. J.A. 132–33, 150, 152. Balocki was aware of Seabrook's participation in Wriglesworth's EEO discrimination suit. J.A. 166. Then, on July 30, 2014, after Wriglesworth and Seabrook

---

[1] On the Army's performance evaluation scale, 1 is the highest rating an employee can receive while 5 is the lowest.

15

were subject to an investigation, Balocki issued Seabrook a proposed 14-day suspension notice. J.A. 161, 166. As a result of the suspension, and at some point in September 2014, Seabrook participated in informal mediation, in which she named Balocki as an offending party. J.A. 194. Mediation yielded no positive results for Seabrook[2] and as such, on January 6, 2015, Seabrook filed a formal EEO complaint[3] via the Department of the Army, Operational Support Area, alleging race and gender discrimination, again naming Balocki as an offending party. Approximately one month after filing her formal EEO complaint, Balocki issued Seabrook a poor performance review for the July 1, 2013 – June 30, 2014 review period—after he was no longer in her supervisory chain and had never provided her with prior counseling or the issuance of an improvement plan. J.A. 136, 193, 195, 197. The same individuals who advised Seabrook not to issue the white male employee a poor performance review rating without prior counseling or the issuance of a performance improvement plan advised Balocki that it was acceptable to issue the poor performance review to Seabrook. J.A. 136, 193, 197.

It is undisputed that Seabrook engaged in perhaps the most quintessential protected activity—filing a formal EEO complaint in January 2015—and in February 2015, she suffered an adverse action by way of receiving a poor review by Balocki. As such,

---

[2] Seabrook's suspension was upheld on October 9, 2014, and she was subsequently reassigned to another position within the Army on November 2, 2014. J.A. 132, 152.

[3] Filing a formal EEO complaint is completely different than engaging in informal mediation counseling. *See* Pre-Complaint Process & EEO Counseling, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/federal-sector/pre-complaint-process-eeo-counseling; https://perma.cc/LX5E-X4SN, (last visited July 31, 2025).

Seabrook clearly has pled a plausible claim for retaliation that satisfies the pleading standard of 12(b)(6). Likewise, Seabrook clearly has pled a plausible claim for disparate treatment based on the stark differences in how she and a white male employee were assessed during the performance evaluation process. Yet, the majority holds otherwise. Accordingly, I must dissent.

## I.

### A.

Starting first with Seabrook's retaliation claim. To sufficiently state a claim for retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer took adverse action against her; and (3) there was a causal link between the two events. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022). "Establishing a 'causal relationship' . . . is not an onerous burden" and a plaintiff can do so by simply establishing "the adverse action bears sufficient temporal proximity to the protected activity," the "existence of facts [] suggest that the adverse action occurred because of the protected activity," or a combination of the two. *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021) (internal quotation marks and brackets omitted) (collecting cases).

### 1.

The majority holds that "Seabrook has not alleged any 'intervening events' to bridge the 'prohibitively long temporal gap' between Balocki becoming aware of her participation in Wriglesworth's EEO proceeding and her poor performance evaluation." Maj. Op. at 12. When the majority made this calculation, however, they relied on the fact that "Balocki

17

issued Seabrook's poor performance review" approximately "five to six months after Balocki and others became aware of Seabrook's participation as a witness in Wriglesworth's EEO proceeding." *Id*. But this calculation was in error.

It is clear the majority misunderstand Seabrook's retaliation claim. This may be somewhat understandable because Seabrook was proceeding pro se. Nevertheless, Seabrook's pleadings must be "liberally construed" and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Seabrook mentions in her amended complaint that she supported Wriglesworth, a Hispanic woman, in her discrimination claims against the Army, and Seabrook mentions Balocki in reference to her participation in Wriglesworth's EEO proceeding. J.A. 132–33. Seabrook includes this in her amended complaint as it provides context and relates to her discrimination claims, but it is not the basis for her retaliation claim. This is because Seabrook engaged in a separate protected activity that is not tethered to Wriglesworth, which is the basis for her retaliation claim. Specifically, Seabrook alleged that on January 6, 2015, she engaged in protected activity by way of filing a formal EEO complaint in which she named Balocki as an offending party based on the issuance of a proposed 14-day suspension notice and Balocki disclosing information regarding her disciplinary action to individuals who did not have a "need to know." J.A. 133, 145–46, 166–67. Seabrook further alleged that she suffered an adverse action on February 18, 2015, in the form of Balocki issuing her a poor performance review. J.A. 136, 193. This adverse action by Balocki bears sufficient temporal proximity to

18

Seabrook's protected EEO activity as this all occurred within an approximate one-month time span.

These allegations alone at the motion to dismiss stage are sufficient to state a claim for retaliation, and, pursuant to this Court's precedent, Seabrook need not allege anything more. *See Smith v. CSRA*, 12 F.4th at 417 (establishing that a plaintiff need only establish "the adverse action bears sufficient temporal proximity to the protected activity" in order to have a retaliation claim); *see also Finley v. Kraft Heinz Inc*., --- F.4th ---, 2025 WL 2089581, at *7 (4th Cir. July 25, 2025) (finding even at the summary judgment stage that an employee making a complaint as early as January 25, 2020 and being terminated on March 26, 2020 constituted "extremely close temporal proximity").[4]

Shockingly, the majority holds that they construe Seabrook's complaint and attachments "more liberally" to include her participation in Wriglesworth's EEO activity as one of the "potential bases for her retaliation claim." Maj. Op. at 11 fn 7. But this so-called "liberally construing" directly contradicts Seabrook's complaint, in which she explicitly alleged: "[i]t was only after I filed a formal complaint naming Mr. Balocki as a responsible Management Official in January 2015 that I received the performance rating that identified 'needs improvement' rating of 4." J.A. 200. In other words, Seabrook alleged that the adverse action she suffered—the poor performance review—caused the retaliation. The majority's attempt to liberally construe Seabrook's complaint in this

---

[4] *Finley*, although recent, was continuing to follow this Court's precedent regarding temporal proximity. Indeed, no case in this circuit or elsewhere has ever held that a one-month time lapse between a protected activity and an adverse action is too long to establish temporal proximity.

19

manner is inconsistent with construing Seabrook's complaint in her favor. Ironically, the majority's liberal construction of Seabrook's complaint has been used to deny her retaliation claim at the motion to dismiss stage.

2.

The majority, in error, also holds that Seabrook fails to "plausibly allege a causal connection" between her filing an EEO complaint in January and her receiving a poor performance review in February. Maj. Op. at 13. But not so. Not only is it undisputed that the protected activity and the resulting adverse action was only a month apart, but Seabrook plausibly alleged factual circumstances to support her claim that Balocki issued the poor performance review in response to her formal January 2015 EEO complaint. First, at the time he issued the evaluation, Balocki was no longer in Seabrook's supervisory chain. J.A. 136, 193. Second, Balocki issued the rating eight months after he had previously indicated he wanted to complete all evaluations, and the appraisal period had expired. *See* J.A. 196, 198. Third, Seabrook was not counseled for poor performance, placed on an improvement plan, or notified that her performance was less than satisfactory, despite meeting with Balocki "no less than twenty times" during the relevant evaluation period.[5] J.A. 197. As such, Seabrook plausibly alleged a causal connection between

---

[5] The majority holds that Seabrook failed to allege that counseling or an improvement plan "must occur or ordinarily occurs before a poor performance review is delivered." Maj. Op. at 14 fn 10. But as explained in Section I.B, this is not true, and Seabrook has plausibly alleged that counseling and/or improvement plans was required with other employees of the Army before a poor performance review is issued.

Balocki's February 2015 issuance of the unsatisfactory rating and her January 2015 EEO complaint.

In addition to these errors, the majority also finds that Seabrook's allegations were speculative and did not "support an inference that Balocki was aware of her complaint when he issued her review." Maj. Op. at 12. But Seabrook's allegations are not speculative. Balocki participated in Seabrook's informal mediation process which occurred before she filed a formal EEO complaint. *See* J.A. 27. It is certainly more than plausible, then, that Balocki—who is "made aware of all EEO activity within the command," J.A. 156, 194, would be aware of an EEO action that involves himself given his position with the Army, given the fact he participated in the informal mediation process with Seabrook, and given the extreme temporal proximity between Seabrook's protected activity and the adverse action she suffered by him a month later. In addition, two things can be true: Balocki can be generally aware of all EEO activity within the command— including EEO activity that names him as an offending official—by virtue of his position as Command Executive Officer and Director, as Seabrook alleged. J.A. 156, 194. But Balocki is very likely to be aware of Seabrook's formal EEO complaint activity because he is a named party in the formal EEO complaint. For an astonishing reason, however, the majority has found otherwise. It is not clear what more Seabrook must allege at the motion to dismiss stage, to support an inference that Balocki was aware of the formal EEO complaint filed against him in January 2015, when he took adverse action against her the next month.

21

In error, the majority also surmises that "the more likely explanation" for Seabrook's poor review is the Army's finding "that her negative leadership created a toxic work environment during the review period." Maj. Op. at 14. But this is an improper conclusion that is not permitted at this stage or even by this Court on appeal. In fact, at the motion to dismiss stage, Seabrook needs only to take care that her allegations are plausible, and she does not need to address or account for any theories that compete against her own allegations. In any event, "the existence of evidence in the record to support" Balocki's position "does not negate the existence of evidence to support" Seabrook's position. *Finley*, --- F.4th ---, 2025 WL 2089581, at *7. In other words, Seabrook has plausibly alleged that she faced retaliation in the form of a poor review after she filed an EEO complaint, and the mere possibility that she received a poor review for another reason does not invalidate her well-pleaded allegations at this stage. As such, the majority's conclusion that Seabrook was terminated for another reason is improper at this stage.

3.

I fear the majority has turned the standard for bringing retaliation claims and the underlying principles of 12(b)(6) on their head. In the majority's view, and despite precedent which cautions against a "bright-line rule" for temporal proximity, *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021), a one-month lapse between a protected activity and an adverse action, without more, weakens the inference for causation. But such a ruling by the majority is inconsistent with controlling precedent and makes it virtually impossible for a plaintiff to plausibly allege retaliation at the motion to dismiss stage. What is more, and in a remarkable turn, the majority has also found that

22

even when, as here, a plaintiff has alleged "more" than just temporal proximity, this is not enough for her claim to survive a motion to dismiss. And, as if making these errors were not enough, the majority has improperly concluded that Seabrook's allegations that Balocki was aware of her complaint at the time he issued her review was "speculative," and there is a "more likely explanation" for Seabrook's subpar review. Maj. Op. at 12–13.

B.

Turning now to Seabrook's disparate treatment claim in which she alleges that a white male employee received preferential treatment in the performance evaluation process. Title VII of the Civil Rights Act of 1964, as amended, creates a private cause of action for employment discrimination based on race, sex, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). To ultimately succeed on a Title VII claim, a plaintiff must either produce evidence of discrimination, or satisfy the requirements of the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). It is well-settled, however, that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" under that standard to withstand a motion to dismiss. *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022) (*quoting Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002). Rather, where a plaintiff purports to state a claim under Title VII, she is merely "required to allege facts to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015); *see also Holloway*, 32 F.4th at 299 (requiring a plaintiff asserting a discriminatory discharge claim to "allege facts sufficient to raise a plausible inference" that the discriminatory action

23

complained of occurred because of his membership in a protected class).  Here, Seabrook must allege facts sufficient to support the plausible inference that:  (1) she is a member of the class protected by Title VII, (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside of her protected class, and (3) the disciplinary measures enforced against her were more severe than those enforced against those other employees.  *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).  And she has done so.

First, Seabrook is a Black woman—a member of the class protected by Title VII. J.A. 133.  Second, the prohibited conduct which Seabrook allegedly engaged in, i.e., poor performance and misconduct, was comparable in seriousness to the poor performance and misconduct of the white male employee, who is outside of her protected class.  What's more, Seabrook alleged that the white male employee, who she supervised, at all relevant times, reported to the same supervisor, and shared the same pay grade as Seabrook.  J.A. 133, 157, 188.  Additionally, in or around July 2013, Seabrook attempted to obtain information regarding how to initiate a disciplinary action against him for non-performance and missing deadlines.  J.A. 157.  During a September 2013 meeting to discuss potential disciplinary action against the white male employee, Seabrook was advised not to issue a rating lower than 3 to the white male employee without prior counseling and the issuance of a performance improvement plan.  J.A. 151.  Seabrook was further instructed to contact the Army "prior to conducting initial counseling, performance discussion, or development of performance standards" regarding this white male employee.  *Id*.  Until March 2014 when she was advised that the disciplinary action against the white male employee was no

24

longer being processed, Seabrook continued to advise her superiors of the white male employee's non-performance, lack of progress, and behaviors which she alleged created a hostile work environment. J.A. 158. The white male employee was never issued a notice of proposed suspension[6] nor did he receive a rating under 3 in accordance with the directions given to Seabrook. J.A. 133, 151–52, 157–58. Third, Seabrook sufficiently alleged that the disciplinary measure enforced against her was more severe than that which was enforced against the white male employee. Seabrook alleged "[t]he same individuals" who advised her not to issue a poor performance review rating "advised Mr. Balocki that i[t] was acceptable to issue a 'needs improvement' rating of 4" to her in February 2015, despite not having any prior counseling or issuance of a performance improvement plan, or an employment record that indicated anything other than exceptional performance. J.A. 136, 193, 197. This is a far worse disciplinary measure considering the white male employee was never disciplined for the same actions. Drawing all reasonable inferences in Seabrook's favor, which the Court must do at this stage, she has plausibly alleged a disparate treatment claim based on preferential treatment.

---

[6] A member of the Labor/Management Employee Relations team with the Army drafted a Notice of Proposed Suspension for the white male employee, but pursuant to instructions from another team member, the finalization of the notice was delayed and ultimately never finalized. J.A. 133, 151–52, 157–58.

25

## II.

I concur in the majority's ruling in part.[7]  I dissent from the majority's ruling dismissing Seabrook's retaliation claim and her discrimination claim based on disparate treatment between her and a white male employee in the evaluation process.  Dismissing these claims at the motion to dismiss stage erroneously stretches the bounds of both Supreme Court and Fourth Circuit precedent.  Accordingly, I dissent.

---

[7] I concur with the majority's holding that Seabrook has failed to allege a hostile work environment claim or a disparate treatment claim in connection with being escorted out of the workplace.